**Minh Thu TRAN, Norman L. Roser, and Washington Mutual Bank, FA, Appellants,**

v.

**William MACHA and Nita Macha, Appellees.**

No. 01–03–00126–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 28, 2004.

David W. Holman, Holman, Keeling & York, P.C., Larry E. Meyer, McCormick, Hancock & Newton, Houston, for appellants.

Anne Edwards, David George, Sandra T. Krider, Edwards & George, LLP, Houston, for appellees.

Panel consists of Justices NUCHIA, JENNINGS, and KEYES.

## OPINION ON MOTION FOR REHEARING

EVELYN V. KEYES, Justice.

We issued our memorandum opinion in this case on April 1, 2004. Appellants filed a motion for rehearing on April 16, 2004. We deny the motion for rehearing, but withdraw our original opinion and substitute this in its stead so that we may more explicitly address whether adverse possession can occur following a mutual mistake regarding boundary lines. We decline, however, to address the constitutional argument raised in the motion for rehearing. *See Phifer v. Nacogdoches County Cent. Appraisal Dist.*, 45 S.W.3d 159, 166 (Tex. App.-Tyler 2000, pet. denied) ("A motion for rehearing does not afford a party an opportunity to raise new issues.").

This is an appeal of a jury's finding that a 20–foot strip of property belongs to plaintiffs/appellees William and Nita Macha because they were in privity with the property's previous owner who had acquired that strip of land via adverse possession. In two points of error, defendants/appellants Minh Thu Tran, Norman L. Roser, and Washington Mutual Bank, FA contend that the evidence is legally and factually insufficient to support a finding of adverse possession. We affirm.

### Factual & Procedural Background

The disputed property is part of a West University subdivision originally developed and platted in the late 1920s. The lots on the block in question were all intended to be 50 to 55 feet wide. When the lots were staked, however, they were staked so that the intended houses themselves would be located 50 feet apart from one another. This mistake ultimately led to lot 5's being 70 feet wide instead of 50 feet wide. The extra 20 feet of land were thought to lie on the east side of the house that was eventually built on lot 5 and were thought to belong to lot 5's owner. Actually, the extra 20 feet lay on the west side of the house built on lot 5. At some point in the 1940s, the original owners of lot 5 built a home and a garage, inadvertently locating the garage and driveway on part of lot 6, as well as on lot 5.

In 1970, the Haliburton family bought lot 5 (4136 Case street). At that time, the Budde family, which was related to the Haliburton family, had been living in the home on lot 6 (4132 Case street) for about 15 years. The Buddes and the Haliburtons both treated the garage and driveway as belonging to the Haliburtons. The Haliburtons used this driveway and garage for their cars for over 20 years, until Lillian Haliburton stopped driving. At that point, she moved her washer and dryer into the garage. Pictures of the adjacent lots show that the Buddes built their own garage and driveway on the east side of their lot, just a few feet away from the Haliburtons' driveway. Relations between the two families and their neighbors were always cordial through the years.[1]

In 1989, the Machas bought the house on lot 4 and have lived there ever since. In 1995, Tran and her husband, Roser, bought the Budde family home on lot 6. They lived there for several years, then moved into a nearby house. They intended to tear down the house on lot 6 and build a new house there. In the interim, they rented the house to tenants. The Machas and Tran and Roser were friends, as well as neighbors, and discussed jointly

---

1. One of the Budde daughters, who lived next door to the Haliburtons while growing up, testified that she and her family had always believed that the Haliburtons owned the garage and driveway. The record further shows that the Machas, Tran, and Roser also all believed the same thing until the land was surveyed in 2001.

buying lot 5 from the Haliburtons and splitting the property so that they would own contiguous extra-large lots. For reasons that are not clear from the record, Roser and Tran apparently withdrew from the deal and the Machas purchased lot 5 from Lillian Haliburton in May 2001, without Roser's and Tran's participation. The property disclosure form prepared in anticipation of the sale of lot 5 from the Haliburtons to the Machas indicates that the lot included a free-standing garage in tear-down condition.

When the Machas obtained a survey before buying lot 5, they discovered that lot 5 did not conform to the official platted boundary lines. Therefore, in addition to securing a general warranty deed conveying all of lot 5 from Lillian Haliburton, the Machas secured a quitclaim deed conveying any interest in the western 20–foot portion of lot 6 that Haliburton might have acquired by adverse possession.

Soon thereafter, the Machas put lot 5 on the market. Because of the additional width of the property, its value increased by half, from roughly $200,000 to $300,000. At about the same time, Roser received a letter from the City of West University informing him that the garage that was serving the house built on lot 5 was a hazard and that, as the owner/taxpayer of lot 6, he needed to demolish or repair it. When they discovered that the garage and driveway everyone had thought were part of lot 5 were recorded as part of their lot— lot 6—Roser and Tran laid claim to that portion of the lot, obtained a fence permit from West University, and fenced it off.

The Machas filed a trespass to try title suit; they sought a temporary restraining order to prevent Roser and Tran from tearing down the garage, and they sought to remove the new fence. Pending a legal resolution of the dispute, the Machas took lot 5 off the market. Roser and Tran counterclaimed, seeking declaratory relief and removal of cloud on their title.

The jury was asked only one question:

Have WILLIAM MACHA and NITA MACHA and their predecessors in privity of estate under whom they claim held the Property in question in peaceable and adverse possession and cultivated, used or enjoyed the Property in question for any period of at least ten years prior to August 24, 2001?

"PRIVITY OF ESTATE" means a transfer and delivery of possession from one possessor to the next.

"PROPERTY" means the westerly twenty feet of Lot 6, Block 26, Colonial Terrace, Section C, an Addition in Harris County, Texas.

"PEACEABLE POSSESSION" means possession of real property that is continuous and not interrupted by a lawsuit to recover the property.

"ADVERSE POSSESSION" means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person.

The jury unanimously answered, "Yes." The trial court awarded full title and possession to the Machas, and the parties bore their own attorney's fees. Roser and Tran filed a motion for judgment notwithstanding the verdict, which the trial court denied, and a motion for new trial that was overruled by operation of law.

### Analysis

In two related points of error, Roser and Tran contend that the evidence is legally and factually insufficient to support the jury's finding that the Machas adversely

possessed part of lot 6.[2]

### Standard of Review

In a no-evidence, legal sufficiency review, we must consider only the evidence and inferences from evidence that support the trial court's findings and must disregard all evidence and inferences to the contrary. *Heldenfels Bros. Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). In a factual sufficiency review, we will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

### Adverse Possession

Adverse possession is defined as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM.CODE ANN. § 16.021(1) (Vernon 2002); *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex.1990). A person must bring suit no later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property. TEX. CIV. PRAC. & REM.CODE ANN. § 16.026 (Vernon 2002). Thus, if the Haliburtons adversely possessed the disputed strip of property, then the Machas possess it because they are in privity with the Haliburtons. *See Parker v. McGinnes*, 842 S.W.2d 357, 360 (Tex.App.-Houston [1st Dist.] 1992, writ denied). (noting that adverse possession does not have to continue in same person if there is privity of estate between each holder and his successor).

■ It is not disputed that the Haliburtons built a driveway and garage on part of lot 6, owned by the Buddes, instead of their own lot, and that everyone believed the Haliburtons owned the garage and driveway built on part on lot 6, which they did not own and on which they did not pay taxes. Nor is it disputed that the Haliburtons used the garage and driveway continuously for at least 15 years, in derogation of the Buddes' right to the land, and that the Machas were in privity with the Haliburtons as possessors of the land. These facts alone constitute legally and factually sufficient evidence to sustain the jury's finding.

■ The crux of Roser and Tran's challenge, both at trial and on appeal, rests on a fundamentally incorrect interpretation of the law of adverse possession. As they define adverse possession, the possession here could not have been adverse because it was not "hostile," *i.e.*, the possession of the 20–foot strip was accidental, not intentional, and relations between the Haliburtons and the Buddes at the time the land was being adversely possessed were harmonious and cordial.

■ The true meaning of "hostile" in the context of adverse possession refers to whether the claim is inconsistent with the rights of the true owner, not to whether the parties themselves are hostile to one another personally. *See Taub v. Houston Pipeline Co.*, 75 S.W.3d 606, 625 (Tex.

---

**2.** As a threshold matter, we first address the Machas' contention that these points of error are waived because Roser and Tran offer a definition of adverse possession that differs slightly from the definition provided to the jury. Roser and Tran define adverse possession as "hostile, exclusive, open and notorious, actual, and continuous for the statutory period." We consider these differences to be negligible; thus, we conclude that the issues raised on appeal comport with the issues raised before the trial court. *See Dayton Hudson Corp. v. Altus*, 715 S.W.2d 670, 675 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.) (noting that error raised on appeal must comport with objection at trial).

App.-Texarkana 2002, pet. denied) (noting that claim is hostile when acts performed by claimant and use made of land are of nature and character that would reasonably notify true owner of adverse claim). There is no authority to suggest a meaning other than this; nor is there any legal requirement that personal animosity be present.

█ The law is also well settled that adverse possession need not be intentional, so long as it is "visible, open, and notorious." *See Calfee v. Duke*, 544 S.W.2d 640, 642 (Tex.1976) (holding claim of adverse possession not defeated by claimant's lack of knowledge that there could be other claimants for the land); *accord King v. Inwood N. Assocs.*, 563 S.W.2d 309, 312 (Tex.App.-Houston [1st Dist.] 1978, no writ) (noting fact that adverse possessors' mistaken belief that they owned land in controversy did not defeat claim). In their motion for rehearing, Roser and Tran contend that adverse possession cannot result from a mutual mistake regarding the boundary lines of a property, relying on authority that requires the adverse claim to be plain and positive. In particular, Roser and Tran rely on *Ellis v. Jansing*, 620 S.W.2d 569, 571–72 (Tex.1981), to support their proposition. This case, however, does no more than reiterate the definition of adverse possession. Roser and Tran appear to be importing into the definition of adverse possession a scienter requirement, *i.e.*, the possession may be open, and it may be adverse to another's claim of right, but unless the possessor knows it is adverse to another's claim there can be no adverse possession. We cannot agree. It is the Haliburtons' acts of building the driveway and garage, using them openly and continuously for more than 15 years as their own, in derogation of the Buddes' right to use that land, and conveying them to the Machas that were

adverse to the Buddes' title, regardless of the Haliburtons' conscious intent to deprive the Buddes of title to the land so used.

In their response to the motion for rehearing, the Machas provided additional authority to support the proposition that adverse possession may indeed occur despite a mutual mistake about property boundary lines. *See Julien v. Baker*, 758 S.W.2d 873, 876–77 (Tex.App.-Houston [14th Dist.] 1988, writ denied) (claim of right cannot be defeated by lack of knowledge of error in land survey); *Yates v. Hogstrom*, 444 S.W.2d 851, 852–53 (Tex. Civ.App.-Houston [14th Dist.] 1969, no writ) (noting that adverse possession my be found regardless of whether claimant was mistaken as to location of boundary line—"a line may be established as a true boundary line of a tract of land by recognition and acquiescence in the line as the true line by all interested parties for a sufficient length of time"); *Boyle v. Burk*, 749 S.W.2d 264, 266 (Tex.App.-Fort Worth 1988, writ. denied) (knowledge that claimed property is that of another is not a prerequisite of adverse possession; it is only necessary that claimant thought he was rightful owner and had no competition for ownership, coupled with actual and visible possession and use); *Fish v. Bannister*, 759 S.W.2d 714, 718 (Tex.App.-San Antonio 1988, no writ) (holding contention that claimants could not formally intend to claim land unless they knew such land was not part of their title was without merit).

█ We hold that the property under dispute here was adversely possessed, despite the mutual mistake regarding the property lines. Both the garage and the driveway constituted an entirely visible use of lot 6 from the time they were mistakenly built on part of 6, and they were used continually by the Haliburtons for more than 15 years, then by the Machas. This

open and continuous use of 20 feet of lot 6 for more than 15 years by the owners of lot 5 in ways inconsistent with the use and enjoyment of the 20–foot strip by the true owners, as if that portion of lot 6 belonged to the owners of lot 5, satisfies the definition of "adverse possession." The line was established as a true boundary line of this tract of land "by recognition and acquiescence in the line as the true line by all interested parties for a sufficient length of time." *See Yates,* 444 S.W.2d at 853.

We overrule both points of error.

We affirm the judgment of the trial court.

Justice JENNINGS, dissenting.

TERRY JENNINGS, Justice, dissenting from denial of rehearing.

Because the undisputed facts of this case are legally insufficient to sustain a claim of adverse possession, I respectfully dissent.

In their second point of error, appellants contend that there is legally insufficient evidence to support the jury's finding that appellees "and their predecessors in privity of estate under whom they claim held the Property in question in peaceable and adverse possession." Appellees concede that they "claim title in this case under Lillian Haliburton." Appellants assert, however, that there is no evidence that Lillian Haliburton, appellees' predecessor in privity of estate, intentionally or knowingly adversely possessed the property in question from her relatives, the Budde family.

In reviewing a no-evidence point, we must view the evidence in the light most favorable to the disputed fact, and we disregard all evidence and inferences to the contrary. *Wal–Mart Stores, Inc. v. Miller,* 102 S.W.3d 706, 709 (Tex.2003). If more than a scintilla of evidence supports the finding, the verdict must be upheld. *Id.* More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997).

Adverse possession means "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM.CODE ANN. § 16.021(1) (Vernon 2002). Under this definition, the majority concludes that

> It is simply not disputed that everyone believed the Haliburtons owned the garage and driveway that were built in part on lot 6, which they did not own and on which they did not pay taxes, and *used the garage and driveway continuously for at least 15 years.* This fact alone constitutes legally and factually sufficient evidence to sustain the jury's finding.

(Emphasis added.) In support of its holding that the evidence was legally and factually sufficient to support the jury's finding of adverse possession, the majority, citing *Calfee v. Duke,* 544 S.W.2d 640, 642 (Tex.1976), notes that "[t]he law is also well settled that adverse possession *need not be intentional,* so long as it is 'visible, open, and notorious.'" (Emphasis added.)

However, in *Calfee,* the Texas Supreme Court expressly stated that "[n]o matter what the use and occupancy of the land may be, the possessor *must intend* to appropriate it." 544 S.W.2d at 642 (emphasis added). As explained by the Court in *Ellis v. Jansing,* "[m]ere occupancy of land without any intent to appropriate it will not support the statute of limitations." 620 S.W.2d 569, 571 (Tex.1981). Further,

[n]o matter how exclusive and hostile to the true owner the possession may be in appearance, it cannot be adverse unless accompanied by the intent on the part of the occupant to make it so. The naked possession unaccompanied with any claim of right will never constitute a bar. *Id.* at 571–72 (quoting *Orsborn v. Deep Rock Oil Corp.*, 153 Tex. 281, 267 S.W.2d 781, 787 (1954)).

In *Ellis,* the Court answered "the question of whether the testimony of [the occupant] that he bought the property [in question] thinking that the boundary was [a] concrete retaining wall and maintained it as part of his yard was sufficient to raise a fact issue of adverse possession." 620 S.W.2d at 571. In that case, the occupant testified that he had never claimed or intended to claim any property other than that which was described in his deed, or what he thought was contained in his deed, and he had never intended to claim any property owned by abutting property owners. *Id.* The Court held that these facts were legally insufficient to sustain a claim of adverse possession. *Id.*

Here, the evidence, viewed in the light most favorable to the jury's finding, establishes that the Haliburtons used the garage and driveway on the property in question and treated the property as if it were their own. However, there is nothing in the record to indicate that the Haliburtons ever intended to claim any property from the Buddes that was actually owned by the Buddes, and such an intention cannot be assumed. Even if the evidence supported an inference that both the Buddes and the Haliburtons thought that the Haliburtons had purchased the property in question, this mutual mistake of fact, in the absence of any evidence that the Haliburtons ever claimed or intended to claim the property, is insufficient to raise a fact issue of adverse possession. *See id.*

Accordingly, I would grant appellants' motion for rehearing, reverse the judgment of the trial court, and render judgment in favor of appellants.