Minh Thu TRAN, Norman L. Roser
and Washington Mutual Bank,
FA, Petitioners,

v.

William MACHA and Nita
Macha, Respondents.

No. 04–1107.

Supreme Court of Texas.

Dec. 1, 2006.

Rehearing Denied March 9, 2007.

David W. Holman, The Holman Law
Firm, P.C., Robert Alan York, Godwin
Pappas Langley Ronquillo LLP, Larry E.
Meyer, McCormick Hancock & Newton,
Houston, for petitioners.

William David George, Connelly, Baker,
Maston, Wotring, Jackson LLP, Anne Gib-
son Edwards, Edwards & George LLP,
Sandra Thourot Krider, Edwards Burns &
Krider LLP, Claire Swift Kugler, Edwards

**914**

Burns & Braziel LLP, Houston, TX, for respondents.

PER CURIAM.

Neighboring relatives shared the use of a driveway for many years, thinking it belonged to one of them when in fact it belonged to the other. The court of appeals held this mutual mistake and mutual use transferred title by adverse possession. We disagree, and thus reverse.

In the 1920s, land on what is now Case Street in the City of West University Place in Harris County was subdivided into lots 55 feet wide. But during construction in the 1930s and '40s, several houses were built on the mistaken assumption that the lots were only 50 feet wide. As a result, each house was increasingly shifted to the east side of its lot, until the house on Lot 5 was built next to that lot's eastern boundary with Lot 6. This case concerns a driveway built on a 20–foot strip of land just east of that boundary—a strip everyone assumed was on Lot 5, but was actually on Lot 6.

When Lillian Haliburton bought Lot 5 in 1970, Lot 6 was owned by her brother's family, the Buddes. For many years, both families used the driveway on the disputed strip. The driveway led to a garage built on both lots, which Haliburton used for parking and storage. Although Haliburton was no longer living at the time of trial, there was testimony that family members all presumed mistakenly that the driveway and garage belonged to her Lot 5.

In 1995, the Buddes sold Lot 6 to the defendants, Minh Thu Tran and Norman L. Roser. In 2001, Haliburton sold Lot 5 to the plaintiffs, William and Nita Macha, who already owned Lot 4 to the west. During the latter transaction, a survey revealed that the driveway was not a part of Lot 5, so the Machas secured a quit-claim deed conveying any interest Haliburton might have acquired in the strip by adverse possession. When Tran and Roser learned of the survey, they obtained a permit and erected a fence around the strip. This suit ensued.

A jury found the strip had passed by adverse possession to Haliburton, and thence to the Machas. The First Court of Appeals affirmed, holding in a divided opinion that Haliburton's use of the strip and everyone's mistaken belief that she owned it were legally sufficient evidence of adverse possession. *See* 176 S.W.3d 128 (Tex.App.-Houston [1st Dist.] 2004). We disagree.

■ Under Texas law, adverse possession requires "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM. CODE § 16.021(1). The statute requires visible appropriation; mistaken beliefs about ownership do not transfer title until someone acts on them. *See, e.g., Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex.1985). Thus, there must be adverse *possession*, not just adverse *beliefs*.

■ The statute requires that such possession be "inconsistent with" and "hostile to" the claims of all others. Joint use is not enough, because "possession must be of such character as to indicate *unmistakably* an assertion of a claim of exclusive ownership in the occupant." *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex.1990) (quoting *Rick v. Grubbs*, 147 Tex. 267, 214 S.W.2d 925, 927 (1948)) (emphasis in original); *McDonnold v. Weinacht*, 465 S.W.2d 136, 141 (Tex.1971). Here, Haliburton shared use of the strip with the Buddes, so her use was not inconsistent with or hostile to their ownership. *See, e.g., Brooks v. Jones*, 578 S.W.2d 669, 673 (Tex.1979) ("It

has long been the law in Texas that when a landowner and the claimant of an easement both use the same way, the use by the claimant is not exclusive of the owner's use and therefore will not be considered adverse.").

 The court of appeals held that Haliburton adversely possessed the strip by building a driveway and garage on it. 176 S.W.3d at 132. But nothing in the record shows she did either. To the contrary, both were in place before she bought Lot 5, and nothing shows who built them or when. We agree that building a structure on property may be sufficient evidence of adverse possession. *See City of El Paso v. Fort Dearborn Nat'l Bank*, 96 Tex. 496, 74 S.W. 21, 23 (1903); *McDow v. Rabb*, 56 Tex. 154, 161 (1882). But the record here shows only that Haliburton *used* the driveway and garage, not that she *built* them.

 The court of appeals also held that "adverse possession need not be intentional, so long as it is visible, open, and notorious." 176 S.W.3d at 133. It is true that "hostile" use does not require an intention to dispossess the rightful owner, or even know that there is one. *See Calfee v. Duke*, 544 S.W.2d 640, 642 (Tex.1976). But there must be an intention to claim property as one's own to the exclusion of all others; "[m]ere occupancy of land without any intention to appropriate it will not support the statute of limitations." *Ellis v. Jansing*, 620 S.W.2d 569, 571 (Tex.1981) (quoting *Wright v. Vernon Compress Co.*, 156 Tex. 474, 296 S.W.2d 517, 522 (1956)); *Nona Mills Co. v. Wright*, 101 Tex. 14, 102 S.W. 1118, 1120 (1907). Here, there is no evidence Haliburton ever intended to exclude the Buddes, or that they used the

driveway only with her express permission.

It may seem harsh that adverse possession rewards only those who believe "good fences make good neighbors,"[1] and not those who are happy to share. But the doctrine itself is a harsh one, taking real estate from a record owner without express consent or compensation. Before taking such a severe step, the law reasonably requires that the parties' intentions be very clear.

Accordingly, without hearing oral argument, we reverse the court of appeals' judgment and render judgment for the defendants. *See* Tex.R.App. P. 59.1.

---

1. Robert Frost, North of Boston, *Mending Wall* (1915):

   There where it is we do not need the wall.
   He is all pine and I am apple orchard.
   My apple trees will never get across

   And eat the cones under his pines, I tell him.
   He only says, "Good fences make good neighbors".