Affirmed and Opinion filed June 23, 2009








Affirmed and Opinion filed June 23, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00034-CV

____________

 

ADOLPH R. KAZMIR AND RUTH S. KAZMIR, Appellants

 

V.

 

RUBEN A. BENAVIDES AND SYLVIA
BENAVIDES,
Appellees

 



 

On Appeal from the 270th
District Court

Harris County, Texas

Trial Court Cause No. 2005-49195

 



 

O P I N I O N

This is an adverse possession case.  Appellants, Adolph R.
Kazmir and Ruth S. Kazmir, appeal a final judgment rendered in favor of
appellees, Ruben A. Benavides and Sylvia Benavides, awarding appellees title to
and possession of an approximately four foot wide section of land that was
originally part of appellants= lot.  Finding no error, we affirm.

 

 








Factual and Procedural Background

The properties at issue are Lot 12, located at 4310 Floyd
Street, and Lot 13, located at 4308 Floyd Street.  While not directly involved
in the adverse possession suit, a third lot, Lot 14, located at 4306 Floyd,
also plays a role in the events at issue here.

In the late 1950's the properties were owned as follows:
Lot 12 was owned by Louis and Mary Cannalito, Lot 13 was owned by Lee and Mary
DeForke, and Lot 14 was owned by Johnny and Sophie Cannalito.  All of the
owners were related.  Mary DeForke and Johnny Cannalito, now deceased, were two
of Louis and Mary Cannalito=s children.  At a point not disclosed in
the record, Louis Cannalito died intestate.  On May 30, 1966, Louis Cannalito=s wife and
children deeded Lot 12 to Sam Cannalito, another son.

At a point in time before Louis Cannalito=s death, the
DeForkes erected a chain link fence around Lot 13.  At the request of Johnny
Cannalito, the DeForkes placed the fence between Lots 13 and 14 approximately 32 feet inside the
Lot 13 property line.  This placement was to give Johnny Cannalito sufficient
room to mow the grass on the side of his house.  At the same time, the DeForkes
built the fence on the Lot 12 side of their property about four feet inside the
Lot 12 property line.  This approximate four foot section is the area in
dispute in this case (the ADisputed Area@). This fence
remained in place and unchanged until January, 2005.








On March 27, 1967, Sam Cannalito sold Lot 12 to
appellants.  Adolph Kazmir admitted at trial that, at the time of the
conveyance, Sam Cannalito showed him the location of a iron survey stake that
marked the actual boundary between Lots 12 and 13.  Mr. Kazmir also testified that he walked the property and found
the fence was past the property line as indicated by the survey stake pointed
out by Sam Cannalito.  Mr. Kazmir also testified that, on a later, unspecified
date, while appellants were away on vacation, the DeForkes built a concrete
patio in their backyard right up to the chain link fence.  According to Mr.
Kazmir, the DeForkes did not seek or obtain his permission to build the patio. 
Also, while Mr. Kazmir realized the patio encroached on Lot 12, he did nothing
to remove it himself, or to compel the DeForkes to remove it.  In addition to
the patio, the DeForkes built a concrete sidewalk connecting their front and
back yards close to the fence between Lots 12 and 13.  Both the patio and the
sidewalk remained in place until appellants had them removed in January, 2005.

On August 24, 1973, appellees purchased Lot 13 from the
DeForkes using a contract for deed.  Under the contract for deed, appellees
paid the insurance and taxes on Lot 13.  Under the terms of the contract for
deed, the DeForkes did not reserve a right of re-entry.  Appellees eventually
paid off the contract for deed and received a warranty deed for Lot 13 on April
30, 1997.  The warranty deed mentions only the legal description of Lot 13.

On September 1, 1973, appellees took possession of Lot 13. 
Appellees did not have the property surveyed at that time.  In addition, both
appellees testified they believed they had purchased everything within the
chain link fences.  Appellees resided at Lot 13 for five years and during that
period, they used the entirety of the yard between the fences.  In addition,
they used both the patio and the sidewalk.  Appellees testified they planted
trees and bushes next to the fence separating Lots 12 and 13.  Appellees
maintained the entire yard up to the fence.  Finally, appellees did not share
the yard with anyone during their residency. 

In 1978, appellees moved to a new neighborhood and began
renting Lot 13.  Appellees rented Lot 13 continuously from 1978 until the time
of the trial.  Mr. Benavides testified that, during this period, appellees= tenants used the
property in the same manner as appellees.  While Mr. Kazmir testified during
the trial, he did not offer any testimony controverting the continuous
occupancy of Lot 13 or the tenants= use of Lot 13.








During his trial testimony, Mr. Kazmir admitted he never
told appellees he claimed the Disputed Area.  In addition, Mr. Kazmir testified
he never demanded that appellees get off his property and never told them to
remove the sidewalk, the patio, or the trees near the fence.

In December 2004, appellees entered into an earnest money
contract to sell Lot 13 to a developer.  As part of the sale process, the
developer had Lot 13 surveyed.  The survey revealed the appellees= fence encroached
approximately four feet into Lot 12.  When appellants learned of the earnest
money contract and the survey results, they tore out the fence between Lots 12
and 13, removed the sidewalk and the encroaching portion of the patio, and
installed a new fence about four feet beyond the location of the original
fence.  Appellants then listed their house for sale.  At this point, the
developer backed out of the purchase of Lot 13 and appellants were required to
refund the earnest money to the developer.

When efforts to negotiate a resolution of the dispute
failed, appellees filed suit alleging ownership by adverse possession of the
disputed area pursuant to sections 16.026 and 16.027 of the Texas Civil
Practice and Remedies Code.  Appellants counterclaimed for a declaratory
judgment.  Following a bench trial, the trial court entered judgment in favor
of appellees and awarded them attorney=s fees as well. 
This appeal followed.

Discussion

A.      Adverse
Possession Under the Ten-Year Statute








Section
16.026(a) of the Texas Civil Practice and Remedies Code provides: Aa person must bring suit not later
than 10 years after the day the cause of action accrues to recover real
property held in peaceable and adverse possession by another who cultivates,
uses, or enjoys the property.@  Tex. Civ. Prac. & Rem. Code Ann. ' 16.026(a) (Vernon 2002).  If an
action for the recovery of real property is barred by the ten-year statute of
limitations, the person who holds the property in peaceable and adverse
possession has full title, precluding all claims.  Id. at ' 16.030(a).  Any ouster by the record
title holder after the ten-year limitations period comes too late.  Sterling
v. Tarvin, 456 S.W.2d 529, 533 (Tex. Civ. App.CFort Worth 1970, writ ref=d n.r.e.).

  APeaceable possession@ means possession of real property
that is continuous and is not interrupted by an adverse suit to recover the
property.  Tex. Civ. Prac. & Rem. Code Ann. ' 16.021(3).  AAdverse possession@ is defined as Aan actual and visible appropriation
of real property, commenced and continued under a claim of right that is
inconsistent with and is hostile to the claim of another person.@  Terrill v. Tuckness, 985
S.W.2d 97, 107 (Tex. App.CSan Antonio 1998, no pet.) quoting Tex. Civ. Prac.
& Rem. Code Ann. ' 16.021(1).  Possession must be Aactual, visible, continuous,
notorious, distinct, hostile, and of such as [sic] character as to indicate
unmistakably an assertion of a claim of exclusive ownership in the occupant.@  Id. at 107B08 quoting Rhodes v. Cahill,
802 S.W.2d 643, 645 (Tex. 1990).

The
character of use required to establish adverse possession varies with the
nature of the land and with its adaptability to a particular use.  Mohnke v.
Greenwood, 915 S.W.2d 585, 593 (Tex. App.CHouston [14th Dist.] 1996, no writ); Vaughan
v. Anderson, 495 S.W.2d 327, 332 (Tex. Civ. App.CTexarkana 1973, writ ref=d n.r.e.).  The adverse
possession claimant need only use the land for some purpose to which it is
adaptable, and in the same manner an ordinary owner would use the property.  Fuentes
v. Garcia, 696 S.W.2d 484, 485 (Tex. App.CSan Antonio 1985,
writ ref=d n.r.e.). 
Whether adverse possession has been established is ordinarily a question of
fact.  Bywaters v.
Gannon, 686 S.W.2d
593, 595 (Tex. 1985).








To prevail on a claim of adverse possession under section
16.026(a), the elements to prove by a preponderance of the evidence are: (1)
actual and visible possession of the disputed property; (2) that is adverse and
hostile to the claim of the owner of record title; (3) that is open and
notorious; (4) that is peaceable; (5) that is exclusive; and (6) involves
continuous cultivation, use, or enjoyment for ten years.  Glover v. Union
Pac. R.R. Co., 187 S.W.3d 201, 213 (Tex. App.CTexarkana 2006,
pet. denied) citing Natural Gas Pipeline Co. v. Pool, 124 S.W.3d 188,
193B94 (Tex. 2003). 
The ten-year limitations period begins to run on the date the adverse possessor
actually and visibly appropriates the claimed land.  Waddy v. City of
Houston, 834 S.W.2d 97, 103 (Tex. App.CHouston [1st
Dist.] 1992, writ denied).

B.      The
Standard of Review

Findings of fact in a bench trial have the same force and
dignity as a jury=s verdict upon jury questions.  City of
Clute v. City of Lake Jackson, 559 S.W.2d 391, 395 (Tex. App.CHouston [14th
Dist.] 1977, writ ref=d n.r.e.).  When challenged on appeal, the
findings are not conclusive if there is a complete reporter=s record, as there
is here.  Material Partnerships, Inc. v. Ventura, 102 S.W.3d 252, 257
(Tex. App.CHouston [14th Dist.] 2003,  pet. denied).  The trial
court is the sole judge of the credibility of the witnesses and the weight to
be given their testimony.  Barrientos v. Nava, 94 S.W.3d 270, 288 (Tex.
App.CHouston [14th
Dist.] 2002, no pet.).  The trial court=s findings will
not be disturbed if there is evidence of probative force to support them.  Id.








A trial court=s findings are
reviewable for legal and factual sufficiency of the evidence by the same
standards that are applied in reviewing evidence supporting a jury=s answer.  Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).  If an appellant attacks the
legal sufficiency of an adverse finding on an issue on which he did not have
the burden of proof, the appellant must demonstrate on appeal there is no
evidence to support the adverse finding.  Price Pfister, Inc. v. Moore &
Kimmer, Inc., 48 S.W.3d 341, 347 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied).  When reviewing the legal sufficiency of the evidence,
we review the evidence in the light most favorable to the challenged finding
and indulge every reasonable inference that would support it.  City of
Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).  We credit favorable
evidence if a reasonable fact finder could and disregard contrary evidence
unless a reasonable factfinder could not.  Id. at 827.  The evidence is
legally sufficient if it would enable fair-minded people to reach the verdict
under review.  Id.  There is Ano evidence@ or legally
insufficient evidence when (1) there is a complete absence of evidence of a
vital fact; (2) the court is barred by rules of law or evidence from giving
weight to the only evidence offered to prove a vital fact; (3) the evidence
offered to prove a vital fact is no more than a mere scintilla; or (4) the
evidence conclusively establishes the opposite of the vital fact.  Id.
at 810.

We review the trial court=s conclusions of
law de novo.  Smith v. Smith, 22 S.W.3d 140, 143B44 (Tex. App.CHouston [14th
Dist.] 2000, no pet.).  Under de novo review, the reviewing court exercises its
own judgment and redetermines each legal issue.  Quick v. City of Austin,
7 S.W.3d 109, 116 (Tex. 1998).  We will uphold conclusions of law on appeal if
the judgment can be sustained on any legal theory the evidence supports.  Waggoner
v. Morrow, 932 S.W.2d 627, 631 (Tex. App.CHouston [14th
Dist.] 1996, no writ).  Incorrect conclusions of law do not require reversal if
the controlling findings of fact support the judgment under a correct legal
theory.  Id.

C.      Is the
evidence of appellees= continuous
occupancy of Lot 13 legally sufficient?

Appellants focus their argument in their first issue on the
undisputed fact that appellees began leasing Lot 13 in 1978.  Appellants
correctly assert appellees had the burden of proving continuity of possession
between the several tenants.  Appellants then contend appellees offered no
probative evidence of continuity of possession between 1978 and 2005.  Appellants
do not dispute that an adverse possessor can assert his claim to property
through a tenant.  Instead, appellants argue appellees= uncontroverted
testimony that they
leased the property continuously from 1978 until the time of the trial and that
the tenants used the property in the same manner as appellees, is legally
insufficient because such testimony is general and conclusory.  We disagree.








Whether a landlord=s possession was
continuous is a question of fact.  See Hankamer v. Sumrall, 257 S.W.2d
827, 832 (Tex. App.CBeaumont 1953, writ ref=d n.r.e.).  In
this bench trial, it was the trial court=s sole prerogative
to weigh the credibility of appellees against the absence of controverting
testimony from appellants, their longtime neighbors.  City of Keller,
168 S.W.3d at 819.  After hearing the testimony and viewing the documentary
evidence, the trial court found this issue adversely to appellants.  In fact,
the trial court could not ignore appellees= undisputed testimony
that was clear, positive, direct, otherwise credible, free from contradictions
and inconsistencies, and which could have been readily controverted.  Id.
at 820.  We hold the evidence on appellees= continuous occupancy
of Lot 13 is legally sufficient and overrule appellants= first issue.

D.      Did
appellees, by purchasing Lot 13 through a contract for deed, acquire sufficient
interest in Lot 13 to meet the exclusive occupancy requirement to adversely
possess the Disputed Area?








Because they raise related arguments, we address appellants= second and third
issues together.[1] 
Appellants= argument found in their second and third issues can
be summarized as follows.  The DeForkes took possession of the Disputed Area before 1967 by building
the chain link fence between Lots 12 and 13, but there is no evidence the
possession is adverse until 1967 at the earliest when the DeForkes poured the
sidewalk and patio in the Disputed Area following appellants= purchase of Lot 12.  Therefore, the
DeForkes do not meet the ten-year requirement for adverse possession prior to
selling Lot 13 to appellees using a contract for deed in 1973.  Appellants then
contend appellees, because they purchased Lot 13 using a contract for deed,
were the equivalent of tenants to the DeForkes, did not have exclusive
possession of the property, and therefore did not acquire an interest in Lot 13
sufficient to begin the ten-year statute of limitations running for their own
adverse possession of the adjacent Disputed Area.[2] 
Because appellees were Atenants@ of the DeForkes, the DeForkes= adverse possession of the Disputed
Area continued and matured sometime prior to 1997, the year appellees paid off
the contract for deed and received a warranty deed for Lot 13 from the
DeForkes.  Appellants then assert that since the DeForkes= adverse possession of the Disputed
Area had matured before appellees finished paying off the contract for deed,
they could only convey their interest in the Disputed Area through a written
instrument.[3]  Because it
is undisputed the 1997 warranty deed does not mention the Disputed Area but
only references the legal description of Lot 13, appellants finish by arguing
the judgment in favor of appellees must be reversed.  We disagree with
appellants= theoretical resolution of these issues.








Because
of differences between a lease and a contract for deed, appellants= reliance on McShan in support
of their proposition that adverse possession of property by a person holding
adjacent property through a contract for deed inures to the benefit of the
seller rather than the purchaser is inapposite.  The Texas Property Code
defines a Atenant@ as a person who is authorized by a lease to occupy a dwelling to the
exclusion of others.  Tex. Prop. Code Ann. ' 92.001(6) (Vernon 2007).  A contract
for deed is an agreement by a seller to deliver a deed to property once certain
conditions have been met.  Graves v. Diehl, 958 S.W.2d 468, 470 (Tex.
App.CHouston [14th Dist.] 1997, no pet.). 
McShan does not involve a contract for deed situation, but instead
addresses the continuity of adverse possession when the contested land and
adjacent property has been leased to a tenant for a period of time.  McShan,
554 S.W.2d at 760B63. Therefore, the McShan court=s statement that a tenant=s possession of land inures to the
benefit of the landlord does not control the outcome in this case.  Id. at 763.

Instead,
we hold the contract for deed passed sufficient interest in Lot 13 for
appellees to have exclusive possession of Lot 13 and the Disputed Area and
commence adverse possession of the Disputed Area for their own benefit.  See
Graves, 958 S.W.2d at 472 (in a nuisance case, court held that parties
possessing property under a contract for deed had sufficient interest in the
property to permit an action for nuisance against a third party); see also
City of Austin v. Capitol Livestock Auction Co., 453 S.W.2d 461, 464 (Tex.
1970) (a purchaser in possession pursuant to a contract for deed is entitled to
the condemnation award in an eminent domain case).  Because appellees= obtained
exclusive possession of Lot 13 through the 1973 contract for deed, we conclude
appellees did not need to rely on any alleged adverse possession by the
DeForkes to meet the ten-year statute of limitations.  Instead, appellees= adverse
possession commenced in 1973 when they occupied Lot 13 and the Disputed Area
and their claim under the ten-year statute of limitations matured in 1983.  We
overrule appellants= second and third issues.

E.      Is the
evidence of appellees= intent to claim
and visible appropriation of the Disputed Area legally sufficient?

In their fourth and fifth issues, appellants contend there
was legally insufficient evidence of appellees= intent to claim
and visible appropriation of the Disputed Area.[4] 
Again, we disagree.








To establish adverse possession, a claimant must enter the
land with a claim of right that is hostile and inconsistent with the claim of
another person.  Tex.
Civ. Prac. & Rem. Code Ann. ' 16.021(1).  AHostile@ use does not require an intention to
dispossess the rightful owner, or even knowledge that there is one.  Tran v.
Macha, 213 S.W.3d 913, 915 (Tex. 2006).  However, there must be an intention
to claim the property as one=s own to the exclusion of all others.  Id.  Belief
that one is the rightful owner and has no competition for the ownership of the
land at issue is sufficient intention of a claim of right.  Calfee v. Duke,
544 S.W.2d 640, 642 (Tex. 1976); Julien v. Baker, 758 S.W.2d 873, 877
(Tex. App.CHouston [14th Dist.] 1988, pet. denied).  A visible appropriation may be
taken as evidence of a claim of right when the claim of right is not otherwise
expressed.  Ramirez v. Wood, 577 S.W.2d 278, 287 (Tex. Civ. App.CCorpus Christi 1978, no writ).

Within
these issues, appellants argue the fence between Lots 12 and 13 was a casual fence
and must be ignored in our analysis.  Assuming appellants= contention that we cannot consider
the fence itself as evidence of appellees= hostile intent to possess and
visible appropriation of the Disputed Area is true, there is still legally
sufficient evidence of appellees= intent to claim and visible
appropriation of the Disputed Area.  Here, appellees testified they believed
they were purchasing everything within the fences around Lot 13.  They also
testified they used the entire yard up to the fences, including the sidewalk
and patio. There was evidence appellees installed a swing set on the patio in the
Disputed Area, used the patio and sidewalk on a regular basis, planted trees
and bushes in the Disputed Area next to the fence, and maintained the yard up
to the fences.  We hold this is legally sufficient evidence of appellees= hostile intent to
possess and visible appropriation of the Disputed Area.  We overrule appellants= fourth and fifth
issues.

 

 








Conclusion

Having overruled all of appellants= issues on appeal necessary for a
final disposition of the appeal, we affirm the trial court=s final judgment.

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Panel consists of
Chief Justice Hedges and Justices Anderson and Hudson.[5]

 









[1]  Appellants=
second issue provides:

 

The [appellees] owned Lot 13 for less than ten years
when they commenced this action.  While a claimant may tack the claim of their
predecessor in interest to their own for purposes of establishing the requisite
period, if title by adverse possession matured in the predecessor, such claim
of title can only be transferred by a written instrument.  Did the trial court
err by in effect finding that the Warranty Deed transferred such claim?

 

Appellants=
third issue provides:

 

The
[appellants] entered into possession of Lot 13 under a Contract for Sale.  The
[appellants] were in effect tenants of the owner of Lot 13 from 1973 until
1997.  Did the trial court err in finding in effect that the [appellants]
claimed the property as their own from 1973 until 2005 contrary to the
exclusivity requirement stated by the Texas Supreme Court in Carter v.
Holmes[, 113 S.W.2d 1225, 1226 (Tex. 1938)]?





[2]  Appellants cite to the case of McShan v. Pitts
in support of their argument appellees were tenants of the DeForkes.  See
McShan v. Pitts, 554 S.W.2d 759, 763 (Tex. App.CSan Antonio 1977, no writ) (stating that possession by
a tenant is considered to be the possession of the landlord for purposes of the
statute of limitations).





[3]  Appellants cite the case of Dale v. Stringer
for this proposition.   See Dale v. Stringer, 570 S.W.2d 414, 418(Tex. App.CTexarkana
1978, writ ref=d n.r.e.). 





[4]  Because of our resolution of appellants= second and third issues, we need not address that
part of appellants= fourth issue challenging the legal sufficiency of the
evidence supporting the DeForkes=
intent to claim the Disputed Area.  Tex. R. App. P. 47.1.





[5]  Senior Justice J. Harvey Hudson sitting by
assignment.