

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00048-CV

America Amada **GONZALEZ** and Jamie Christina Garza McRae,
Appellants

v.

Jose Gilberto **PEÑA**, et al.,
Appellees

From the 381st Judicial District Court, Starr County, Texas
Trial Court No. DC-10-359
Honorable Jose Luis Garza, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:         Sandee Bryan Marion, Chief Justice
                 Karen Angelini, Justice
                 Patricia O. Alvarez, Justice

Delivered and Filed:  February 4, 2015

DISMISSED IN PART; AFFIRMED

This appeal arises from a dispute over the ownership of a 49.799 acre tract of land. After appellants America Amada Gonzalez and her daughter Jamie Christina Garza McRae asserted they owned the entire 49.799 acres partially by deed and partially through adverse possession, appellee Jose Gilberto Peña filed the underlying lawsuit seeking to clear his title to an undivided 24.901 acres of the land. Appellee Maria Guadalupe Escobar Villarreal was also a party to the lawsuit and sought to defend her title to an undivided 8.2992 acres of the land.

On appeal, appellants America Amada Gonzalez and Jamie Christina Garza McRae challenge findings of fact and conclusions of law made by the trial court following a bench trial relating to the record title ownership of the land and Gonzalez's claim of adverse possession. We dismiss appellants' issues on appeal regarding the record title ownership of the land based on lack of standing. We otherwise affirm the trial court's judgment.

## BACKGROUND

The real property involved in the underlying dispute is a 49.799 acre tract of land legally described as Parcel No. 11, Tract No. 30, Porcion No. 78, Mier Jurisdiction, Starr County, Texas ("Parcel No. 11"). In 1981, a final decree was entered by the Starr County District Court vesting title to Parcel No. 11 in the following parties as tenants in common:

| | | |
|---|---|---|
| Flavio Escobar | - | 12.449 acres |
| Andres Escobar | - | 12.449 acres |
| Librada M. Escobar | - | 12.449 acres |
| Manuel Escobar, Jr. | - | 3.113 acres |
| Silvia E. Cisneros | - | 3.113 acres |
| Herlinda E. Cantu | - | 3.113 acres |
| Jose Angel Escobar | - | 3.113 acres |

Flavio, Andres, Manuel, and Jacinto were the sons of Santos Escobar, and each were to receive an undivided one-fourth interest in Parcel No. 11. Because Manuel died prior to 1981, the decree vested his one-fourth interest in his four heirs, listed in the decree as Manuel Escobar, Jr., Silvia E. Cisneros, Herlinda E. Cantu, and Jose Angel Escobar. Similarly, Jacinto also died prior to 1981, so the decree vested his one-fourth interest in his wife, Librada M. Escobar.

As previously noted, appellee Jose Gilberto Peña filed the underlying lawsuit seeking to clear his title to an undivided 24.901 acres of Parcel No. 11. Peña claimed to have purchased the one-fourth interest owned by Andres, consisting of an undivided 12.449 acres, in 1981.[1] Peña also

---

[1] Peña's title ownership to this interest was not disputed at trial and is not disputed on appeal.

claimed to have purchased the one-fourth interest owned by Manuel's four heirs, also consisting of an undivided 12.449 acres, in 2009. In his petition, Peña refers to the claim of ownership to his land being asserted by appellants America Amada Gonzalez and her daughter Jamie Christina Garza McRae (collectively referred to herein as "Gonzalez"). Peña requests that the trial court clear the cloud cast upon his interests by Gonzalez's claim and further requests a partition of Parcel No. 11.

In her answer, Gonzalez asserted that she owned a one-fourth interest in Parcel No. 11 which she purchased from Flavio in 1985.[2] Gonzalez also claimed title to the remaining acres in parcel No. 11 by adverse possession under the ten-year adverse possession statute.

With regard to the one-fourth interest vested in Librada in the 1981 decree, evidence established that Librada died before the decree was entered which fact was unknown to the trial court that entered the 1981 decree. In view of this fact, the trial court in the underlying lawsuit appointed an attorney at litem to represent Librada's unknown heirs.

Appellee Maria Guadalupe Escobar Villarreal was also a party to the underlying lawsuit, and she alleged that she owned an undivided 8.2992 acres of Parcel No. 11. Because Librada died before the 1981 decree was entered and because the land was to remain with the brothers, Villarreal contended that the interest awarded to Librada in the 1981 decree was owned by Flavio, Andres, and Manuel's four heirs, with each owning one-third of the one-fourth interest the decree awarded to Librada. Villarreal also contended that in 1982, she purchased Andres's interest in the interest awarded to Librada, and later purchased Flavio's interest in 1986.

After a bench trial, the trial court entered findings of fact and conclusions of law and concluded that Parcel No. 11 was owned as follows:

---

[2] Gonzalez's ownership of this interest was not disputed at trial and is not disputed on appeal.

| | |
|---|---|
| Jose Gilberto Peña and his wife | undivided 24.901 acres |
| Maria G. Villarreal | undivided 8.2992 acres |
| Unknown Heirs of Librada Escobar | undivided 4.1498 acres |
| America Amada Gonzalez and | |
| Jamie Christina Garza | undivided 12.449 acres |

The trial court concluded that Parcel No. 11 was susceptible to fair and equitable partitioning and appointed commissioners to make the partition. The trial court rejected the adverse possession claim asserted by Gonzalez.

## ADVERSE POSSESSION

Gonzalez challenges the trial court's adverse finding on her adverse possession claim. In an appeal from a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence used to support them, just as we would review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). "When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). "In reviewing a 'matter of law' challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary." *Id*. "If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law." *Id*. "The point of error should be sustained only if the contrary proposition is conclusively established." *Id*.

In order to establish adverse possession as a matter of law, Gonzalez was required to conclusively establish each of the following elements of the definition of adverse possession: (1) actual and visible appropriation of real property; (2) commenced and continued under a claim of right that is; (3) inconsistent with and hostile to the claim of another. *Bywaters v. Gannon*, 686

S.W.2d 593, 595 (Tex. 1985); *Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 426 S.W.3d 800, 804–05 (Tex. App.—San Antonio 2014, pet denied); TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(1) (West 2002). In addition, under the ten-year adverse possession statute, Gonzalez was required to prove she cultivated, used, or enjoyed the property for ten continuous years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.026(a); *Kazmir v. Benavides*, 288 S.W.3d 557, 561 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

The doctrine of adverse possession is a harsh one because it involves taking real estate from a record owner without express consent or compensation. *Tran v. Macha*, 213 S.W.3d 913, 915 (Tex. 2006). "Before taking such a severe step, the law reasonably requires that the parties' intentions be very clear." *Id.*

A.      Oral Partition

Because the trial court concluded that the 49.799 acres of Parcel No. 11 was undivided and held by the owners as tenants in common, the trial court implicitly found that Parcel No. 11 had not been orally partitioned. Gonzalez contends the trial court erred in failing to find an oral partition.

Although cotenants may voluntarily partition their land, all cotenants must participate in a voluntary partition. *Dierschke v. Cent. Nat'l Branch of First Nat'l Bank at Lubbock*, 876 S.W.2d 377, 380 (Tex. App.—Austin 1994, no pet.); *State v. Kirkpatrick*, 299 S.W.2d 394, 397 (Tex. Civ. App.—Dallas 1957, writ ref'd n.r.e.). In this case, Gonzalez relies on testimony by Peña that he believed he owned the northern part of Parcel No. 11 based on statements made by Andres and Flavio. Similarly, Gonzalez relies on Villarreal obtaining a survey of a specific section of Parcel No. 11 which she believed to be the acreage she owned. No evidence was presented, however, to show that Manuel's heirs and Librada's unknown heirs participated in a voluntary partition of

Parcel No. 11. Because all cotenants must participate in a voluntary partition, Gonzalez failed to conclusively establish that Parcel No. 11 had been voluntarily partitioned.

B.        Adverse Possession by Cotenant

"Because co-tenants to an undivided estate have an equal right to 'enter upon the common estate and a corollary right to possession,' a co-tenant seeking to establish title by adverse possession must prove, in addition to the usual adverse possession requirements, an ouster of the co-tenant not in possession or repudiation of the co-tenancy relationship." *Dyer v. Cotton*, 333 S.W.3d 703, 712 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (quoting *Byrom v. Pendley*, 717 S.W.2d 602, 605 (Tex. 1986)). "The ouster standard that applies to cotenants differs from the adverse possession requirement courts impose between strangers because cotenants have rights to ownership and use of the property a stranger would not have." *BP America Prod. Co. v. Marshall*, 342 S.W.3d 59, 70 (Tex. 2011). "[A] co-tenant may not adversely possess against another co-tenant unless it clearly appears he has repudiated the title of his co-tenant and is holding adversely to it." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 756 (Tex. 2003). The repudiation must be clear, unequivocal, and unmistakable. *Todd v. Bruner*, 365 S.W.2d 155, 160 (Tex. 1963); *Thedford v. Union Oil Co. of Calif.*, 3 S.W.3d 609, 612 (Tex. App.—Dallas 1999, pet. denied).

In this case, the evidence established that Gonzalez built two structures on the southwestern corner of Parcel No. 11. The evidence at trial also established Peña's belief that Gonzalez was entitled to possess and improve that acreage because Peña believed he owned acreage in the northern section of Parcel No. 11. Any cotenant has a right to be in the possession of property in which she owns an interest, and if a cotenant's actions "are susceptible of explanation consistent with the existence of the common title then such acts cannot be such as to give constructive notice to the cotenants out of possession." *Todd*, 365 S.W.2d at 160. Because Gonzalez's actions in

improving the southwestern corner of Parcel No. 11 are consistent with the parties' understanding of their common title, these actions did not constitute either an ouster or a repudiation.

Gonzalez also testified that she repaired fences, cleared land, and grazed cattle and goats. First, Gonzalez's testimony was that these actions were occasional and sporadic. *See Todd*, 365 S.W.2d at 160 (stating repudiation must be clear, unequivocal, and unmistakable); *Mendoza v. Ramirez*, 336 S.W.3d 321, 329 (Tex. App.—El Paso 2010, pet. denied) (stating sporadic, irregular, and occasional use of land does not establish adverse possession). Second, Gonzalez's testimony was contradicted by the testimony of other witnesses, and the trial court's findings of fact reveal that the trial court discredited Gonzalez's testimony. Most importantly, however, "[f]encing, farming, cultivating and use of the land by one cotenant is not inconsistent with his right as cotenant and is not, of itself, proof of such possession of the property as would start the running of limitations against the other cotenant." *Hernandez v. Hernandez*, 611 S.W.2d 732, 735 (Tex. Civ. App.—San Antonio 1981, no writ).

In 2007, when Gonzalez first began improving the fence in the northern section of Parcel No. 11, Peña testified that he met with Gonzalez and she acknowledged his common ownership. Alberto Guerra, who introduced Peña to Gonzalez at the 2007 meeting, also testified that Gonzalez acknowledged Peña's ownership. Although Gonzalez denied having any such conversation, the trial court, as the sole judge of the credibility of the witnesses, discredited Gonzalez's testimony and expressly found that Gonzalez had acknowledged Peña's ownership at the meeting. Accordingly, Gonzalez's actions in improving the fence in 2007 did not constitute a repudiation.

Instead, the only evidence of a repudiation occurred in 2009, when Gonzalez informed Peña that she owned all 49.799 acres of land. Because this repudiation was less than ten years before Peña filed the underlying lawsuit, however, the evidence supports the trial court's finding that Gonzalez failed to prove her adverse possession claim.

## STANDING AND TITLE ISSUES

"The requirement of standing is implicit in the Texas Constitution's open courts provision, which contemplates access to the courts only for those litigants suffering an injury." *The M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001). "Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case." *Id.* Standing, as a component of subject matter jurisdiction, is an issue that may be raised by the court for the first time on appeal; it may not be waived by the parties. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993). Standing is a question of law that is reviewed de novo. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 149–50 (Tex. 2012).

The test for standing requires that there be a real controversy between the parties which will actually be determined by the judicial declaration sought. *See Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996). "Without breach of a legal right belonging to the plaintiff[,] no cause of action can accrue to his benefit." *See Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976). "The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome...." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). Therefore, to establish standing, a person must demonstrate he maintains a personal stake in the controversy. *See Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984); *Njuku v. Middleton*, 20 S.W.3d 176, 177 (Tex. App.—Dallas 2000, pet. denied). Moreover, a personal stake in the controversy must "exist between the parties at every stage of the legal proceedings, including the appeal." *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001).

In the trial court below, in addition to attempting to prove her adverse possession claim, Gonzalez also challenged the record title ownership of Peña, Villarreal, and the Unknown Heirs of Librada Escobedo. Gonzalez, however, does not claim record title ownership to the undivided

interests claimed by Peña, Villarreal, and the Unknown Heirs. Because we have held that the trial court properly found against Gonzalez on her adverse possession claim, Gonzalez does not have standing to challenge the trial court's conclusions regarding the interests owned by Peña, Villarreal, and the Unknown Heirs because Gonzalez does not claim to own record title to those interests. Only a person claiming title ownership of those interests would have a sufficient relationship to a claim asserting title ownership of those interests to have standing. *See Lovato*, 171 S.W.3d at 848. Accordingly, the issues Gonzalez raises on appeal regarding the title ownership of Peña, Villarreal, and the Unknown Heirs are dismissed for lack of standing.[3]

## CONCLUSION

The issues raised on appeal regarding title ownership of the land are dismissed based on Gonzalez's lack of standing to assert those issues, and the trial court's judgment is affirmed.

Sandee Bryan Marion, Chief Justice

---

[3] During oral argument, Villarreal's attorney also raised an argument regarding the title ownership awarded to the Unknown Heirs of Librada Escobar, asserting that interest should have been awarded to Manuel's four heirs. We note, however, that any party who seeks to alter the trial court's judgment must file a notice of appeal, and Villarreal did not file a notice of appeal. TEX. R. APP. P. 25.1(c).