In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-23-00245-CV

**JJ&A PARTNERSHIP RENTAL, LP AND JAMES M. FULTON JR.,
Appellants**

**V.**

**J&D PARTNERS, LTD., CHERYL HUELSMAN, AND JAMES M.
FULTON SR., Appellees**

**On Appeal from the 260th District Court
Orange County, Texas
Trial Cause No. D200837-C**

**MEMORANDUM OPINION**

Appellants JJ&A Partnership Rental, LP ("JJ&A") and James M. Fulton, Jr.
("JR") (collectively "Appellants," or "Defendants," or "Counter-plaintiffs") appeal
from a jury verdict and final judgment rendered in favor of Appellees and Plaintiffs
J&D Partners, LTD ("J&D"), Cheryl Huelsman, and Counter-Defendant James M.
Fulton, Sr. ("SR") (collectively "Appellees," "Plaintiffs," or "Counter-defendants").
Before trial, Plaintiffs and Counter-defendants moved for summary judgment as to

1

JJ&A's and JR's counterclaims and as to JR's third-party claim, and the trial court granted partial summary judgment for the Plaintiffs and Counter-defendants on Counter-plaintiffs' claims for breach of fiduciary duty, demand for an accounting, and request for appointment of a receiver. Plaintiffs' claims and Defendants' counterclaims pertaining to an easement across J&D's property and disputed ownership of a tract occupied by Huelsman were tried to a jury. The jury answered in favor of Plaintiffs, and the trial court signed a Final Judgment incorporating the partial summary judgment rulings and the jury's verdict.

On appeal, Appellants argue that: (1) Huelsman's admission that she did not exercise a claim of right exclusive to others is an admission that required a finding inconsistent with the verdict as a matter of law; (2) the trial court's summary judgment was in error where JR is a beneficiary under the Estates Code even if his interest is contingent; and (3) Huelsman and J&D's failure to replat is a basis that the trial court should have used to grant JR's request for an easement where the easement tract was platted and where JR relied on the recorded plat. As explained below, we affirm the trial court's judgment in part, and we reverse and remand in part.

## I. BACKGROUND

This litigation concerns four adjacent tracts of land in Orange County, Texas, ownership by adverse possession of one tract and an easement across one of the

2

tracts. A photograph admitted into evidence at trial showing the general location of the tracts and the easement marked with diagonal lines is included here for reference:



Map data ©2020 , Map data ©2020    20 ft

J&D is a limited partnership that SR owned with his now-deceased wife, Dorothy, who was also JR's mother. JJ&A is a limited partnership owned and operated by JR. J&D owns Tract A, a 1.7-acre tract. JJ&A owns Tract B, a .65-acre tract, which it acquired in 2015. Huelsman owns Tract C, a .22-acre tract, that is sometimes referenced in the record as Lots 8 and 9 of Block 31 on a Rose City Subdivision plat. The parties dispute whether Huelsman or JJ&A owns Tract D (hereinafter referred to as "Tract D", "the disputed Tract D", or "the disputed property in question"), [1] which is shown on some plats as a "right-of-way" or "abandoned right-of-way." Huelsman asserts ownership by adverse possession of

---

[1]Tract D is the disputed property in question, as shown on the aerial map on this page. It is also described as a .33-acre tract in the trial court's Final Judgment and generally depicted on Exhibit A to the Final Judgment.

3

Tract D, specifically that she has used Tract D as her own for thirty-five years and paid taxes on it for over thirty years. JJ&A and JR claim JJ&A owns Tract D by way of his Quitclaim Deed dated June 24, 2019. In 2020, a tenant of JJ&A moved a trailer onto Tract D and began residing there.[2]

Plaintiffs allege that Tract C had a "prescriptive easement" across Tract A, and J&D "gives permission and full authority to Plaintiff Huelsman to use the easement." They also assert that beginning in 2020, JJ&A, JR, and JJ&A's tenant began using the easement across Tract A to access Tract D without permission. Plaintiffs assert that JJ&A does not have express permission to use the easement and "cannot establish a legal or common law easement on the driveway/easement across Tract A." Plaintiffs also claim that JJ&A and JR do not need the easement to access Tract B, which is off Boxwood Street, so they have "other means of access."

In September 2020, Plaintiffs sued Defendants asserting the following causes of action in the alternative: trespass on the easement and Tract D; temporary and permanent injunction; declaratory judgment; trespass to try title under section 22 of the Texas Property Code; suit to quiet title; and title by limitations, i.e., adverse possession. Plaintiffs also specifically denied that Defendants were bona fide purchasers. Plaintiffs requested the following relief: a temporary and permanent

---

[2]Plaintiffs also sued JJ&A's tenant, Laura Travis, but non-suited their claims against her before trial.

4

injunction; actual damages; special damages; a judgment finding Defendants guilty of trespass to try title and that Huelsman is the fee simple owner of Tract D or alternatively a judgment removing the cloud on Huelsman's title created by the Quitclaim Deed and JJ&A; a judgment ordering Defendants to remove all improvements and personal property from Tract D; a judgment for Huelsman that she is the fee simple owner of Tract D by limitations under the Texas Property Code and Texas Civil Practice & Remedies Code; pre- and post-judgment interest; reasonable and necessary attorney's fees; and court costs.

In November 2020, Defendants filed their Original Answer. Defendants asserted a general denial and among other things that: (1) Huelsman's use of the easement was non-exclusive, as it was depicted on a subdivision plat; (2) that JR has an easement by necessity and that JJ&A adversely possessed Tract D; (3) Huelsman is not a bona fide purchaser in good faith; (4) SR authorized Defendants' use of the easement; (5) Plaintiffs are estopped from asserting the claims raised in their Original Petition based on equitable estoppel; (6) Plaintiffs are estopped from asserting the claims raised in their Original Petition based on judicial estoppel and specifically that JR has property rights as to property claimed to be owned by J&D based on the trusts created by Dorothy Fulton; (7) Plaintiffs are estopped from asserting the claims raised in their Original Petition based on estoppel by contract; (8) Huelsman's claim of ownership and claim to the easement is unenforceable based

5

on the statute of frauds; and (9) that Plaintiffs have waived their rights as to the use of the easement.

In January 2021, Defendants filed "JJ&A Partnership Rental, L.P. and James M. Fulton, Jr.'s Counterclaim and James M. Fulton Jr.'s Third-Party Action." JR asserted third-party claims against SR for breach of fiduciary duty related to SR's role as Trustee of the Trusts created by Dorothy's Will, as executor of that Will, and as a "partner." JR demanded an accounting and sought appointment of a receiver for J&D under Texas Civil Practice & Remedies Code section 64.001 and Texas Property Code section 114.008. Defendants counterclaimed for declaratory relief seeking: declaration of an easement by prescription; declaration that JJ&A and JR have a superior title to Tract D by way of the Quitclaim Deed; and a declaration of an easement by necessity, asserting that his property is landlocked. Finally, Defendants filed a suit to quiet title and to remove the cloud on his title caused by Huelsman's claim.

The month before trial, Plaintiffs and Counter-defendants moved for summary judgment. The trial court granted their Motion for Summary Judgment on JR's breach of fiduciary duty counterclaim, the demand for an accounting, and the demand for appointment of a receiver. The trial court denied the Motion for Summary Judgment as to the easement and competing ownership claims for Tract D. Those outstanding real property claims were tried to a jury, with (1) Huelsman

6

attempting to show a superior claim to the disputed Tract D by adverse possession and (2) JJ&A and JR attempting to show they were entitled to an implied easement across Tract A owned by J&D to reach a larger piece of "swampland" property that JR purchased through JJ&A in 2011. Two questions were submitted to the jury, which found in favor of Plaintiffs.

QUESTION NO. 1

Did Cheryl Huelsman hold the disputed property of a 0.33 acre tract in peaceable and adverse possession for a period of at least 25 years or 10 years?

"Peaceable possession" means possession of real property that is continuous and is not interrupted by an adverse suit to recover the property.

"Adverse possession" means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and hostile to the claim of another person.

"Claim of right" means an intention to claim the real property as one's own to the exclusion of all others.

A claim of right is hostile only if either (1) it provides notice, either actual or by implication, of a hostile claim of right to the true owner; or (2) the acts performed on the real property, and the use made of the real property, were of such a nature and character that would reasonably notify the true owner of the real property that a hostile claim is being asserted to the property.

To establish peaceable and adverse possession, a claimant must also have cultivated, used, or enjoyed the property.

Answer "Yes" or "No."

Answer: YES

QUESTION NO. 2

Did James Fulton, Jr. or JJ&A Partnership Rental, LP establish an implied easement by necessity across a 60' Right of Way?

In order to establish an implied easement by necessity, James Fulton Jr. or JJ&A Partnership, LP must establish each of the following:

(1) Unity of ownership of the alleged dominant and servient estates before severance;

7

(2) The claimed easement is a present necessity and not a mere convenience; and
(3) The necessity for the easement existed when the two estates were severed.
"Dominant estate" is the property owned by the alleged easement holder.
"Servient estate" is the property burdened by the alleged easement.

Answer "Yes" or "No."
Answer: NO

The trial court incorporated its summary judgment ruling and the jury's verdict into the Final Judgment for Plaintiffs. Defendants filed a Motion for New trial then timely appealed.

For purposes of organization and clarity, we include relevant factual background relating to each of the respective issues below.

## II. ISSUE TWO: SUMMARY JUDGMENT ON TRUST CLAIMS

We first address Appellants' second issue, in which they contend that the trial court erred by granting a summary judgment in favor of Appellees because they contend JR is a beneficiary under the Estates Code even if his interest is contingent. Appellees respond that the trial court did not err in granting summary judgment, and multiple grounds raised in the Motion for Summary Judgment support the judgment, yet JR has only challenged one ground on appeal.

## A. Summary Judgment Record

On January 23, 2023, Plaintiffs filed their combined Traditional and No Evidence Motion for Summary Judgment. In support of their Motion for Summary Judgment, Plaintiffs included the following evidence: Defendants' Counterclaim and Third-Party Action; Last Will and Testament of Dorothy C. Fulton; "Assignment, Distribution and Termination Agreement for the Estate of Dorothy C. Fulton, Deceased" executed by SR; J&D's corporate documents; and Defendants' Original Answer. For purposes of brevity, we limit our discussion of the summary judgment record to those claims the trial court granted. *See* Tex. R. App. P. 47.1 (requiring the appellate court to hand down an opinion as brief as practical that addresses all issues necessary to the appeal's resolution).

### 1. Traditional Motion

In their Traditional Motion, Plaintiffs argue that JR was not a beneficiary of two trusts created by Dorothy's Will, the Fulton Family Trust ("Family Trust") and the Fulton Marital Trust ("Marital Trust"), thus SR had no fiduciary duty to JR. In support of this argument, Plaintiffs attached Defendants' Counterclaim and "The Last Will and Testament of Dorothy C. Fulton" ("the Will") as evidence. The Will names SR as the Trustee of the Marital Trust and the sole beneficiary of the Marital Trust and provides that "My Trustee [SR] shall, during the life of my spouse [SR], pay to my spouse [SR] . . . all of the income[,]" and instructs that SR as the Trustee

9

shall "during my spouse's [SR's] life, pay to or for my spouse's [SR's] benefit, so much of the principal of this Trust[.]"

As to the Family Trust, Plaintiffs argue that under the Will, Dorothy's residuary estate is given to SR as Trustee. They explain the Will provides that while SR is alive, the Trustee [SR] "may pay so much of the net income and principal of this Trust to or for the benefit of my spouse [SR] as my Trustee [SR] may determine." As for the residuary Family Trust, the Will also provides, "[T]o the extent that the income from this Trust is not distributed to my spouse, my Trustee [SR] may distribute such income to my children (or their descendants) for their education, health, support, maintenance, all in the sole discretion of my Trustee [SR]." Plaintiffs argue that SR has the right to distribute all income and principal to himself, if he chooses. Therefore, only if there is undistributed income, SR may—at his sole discretion—distribute it to JR. According to Plaintiffs, SR may refuse to distribute anything to JR, so absent a right to distribution, JR "is not an actual beneficiary of the Fulton Family Trust."

Regarding a third potential trust under the Will, the James and Dorothy Fulton Descendants' Trust ("Descendants' Trust"), Plaintiffs assert JR cannot be a beneficiary under it, because it does not exist. They argue that the Descendants' Trust is only created after SR's death, and since SR is still alive, it does not exist, and SR does not owe JR a fiduciary duty under the Descendants' Trust.

10

Further, Plaintiffs attach as evidence a recorded "Assignment, Distribution, and Termination Agreement for the Estate of Dorothy C. Fulton, Deceased" that terminates all the trusts and distributes all income and principal from the trusts to SR, which they argue the Will expressly authorizes. Plaintiffs contend that, "at a minimum," even if JR is a beneficiary under the Family Trust, such that there is a fiduciary relationship, there can still be no breach of that duty since the trust instrument gives SR sole discretion to distribute the income and principal.

Plaintiffs also deny JR's claim that JR and SR are partners or have ever been partners in J&D, so there can be no fiduciary relationship as partners. Plaintiffs include as evidence J&D's "Certificate of Limited Partnership," "Limited Partnership Agreement," and "First Amended Limited Partnership Agreement."

As to JR's demand for an accounting, Plaintiffs contend in their Traditional Motion that JR has no basis to demand an accounting, and in fact, "an accounting was provided by SR[,]" and JR failed to ask for anything else.

**2. No-Evidence Motion**

Among other things, Plaintiffs argue in the no-evidence portion of their Motion that there is no evidence of all three elements of JR's breach of fiduciary duty counterclaim. Specifically, they contend that there is no evidence that: (1) JR and SR had a fiduciary relationship; (2) SR breached a fiduciary duty to JR; and (3) that SR's breach proximately caused injury to JR or resulted in a benefit to SR.

11

Plaintiffs also argue that no evidence supported Defendants' request for appointment of a receiver, and specifically under Texas Civil Practice and Remedies Code section 64.001 there is no evidence of: (1) an action by a vendor to vacate a fraudulent purchase of property; (2) an action by a creditor to subject any property or fund to his claim; (3) an action between partners or others jointly owning or interested in any property or fund; (4) an action by a mortgager for the foreclosure of the mortgage and sale of the mortgaged property; (5) a company that is insolvent, is in imminent danger of insolvency, has been dissolved, or has forfeited its corporate rights; or (6) any other case in which a receiver may be appointed under the rules of equity. The No-Evidence Motion for Summary Judgment did not address the claim for a receivership under Texas Property Code section 114.008.

**3. Defendants'/Counter-Plaintiffs' Response to Summary Judgment**

Defendants/Counter-Plaintiffs filed a Response to Plaintiffs'/Counter-Defendants' Motion for Summary Judgment. In support of their Response, they included the following evidence pertaining to the trust claims: Last Will and Testament of Dorothy C. Fulton noting page 7 requiring an accounting at the close of each fiscal year and upon termination of a Trust by the Trustee; Inventory of Dorothy C. Fulton Estate; Assignment of Limited Partnership Interest in J&D by the Estate Distribution Agreement the Fulton Family Trust Created Under the Will of Dorothy C. Fulton dated January 2008; Proposed Trust Termination Agreement;

Proposed Access Agreement; February 10, 2022 Correspondence and Court Ordered Accounting; and Temporary Injunction Transcript dated January 7, 2022.

In Response, JR contends that SR, as executor of Dorothy's estate and trustee of the estate's property owed a fiduciary duty of care to the beneficiaries of the estate. JR contends that SR improperly attempted to have the beneficiaries of the trust sign a Trust Termination Agreement. JR further asserts that he was a beneficiary under the expansive definition set forth in Texas Property Code section 111.004, and that where a trustee has profited through a breach of trust, the plaintiff is entitled to equitable relief without having to show the breach caused damages. In support of this, he points to evidence in the form of the unsigned Trust Termination Agreement.

JR also responds that with respect to an accounting, the court ordered an accounting, and Plaintiffs'/Counter-Defendants' accounting was incomplete, as SR only provided his personal tax returns, which show he took property meant for the trust for himself. They dispute SR's contention that he took all the property, so the trust was never funded, noting the seventy percent assignment of J&D.

In Response to the No-Evidence Motion for Summary Judgment as to the receivership, Defendants/Counter-Plaintiffs address the appointment of a receiver under Texas Civil Practice & Remedies Code section 64 but do not point to any specific evidence to show the challenged elements. As to their claims for a

receivership under Texas Property Code section 114.008, Defendants/Counter-Plaintiffs argue that Plaintiffs/Counter-Defendants failed to address this claim in their Motion for Summary Judgment.

**4. Plaintiffs'/Counter-Defendants' Reply to Response to Motion for Summary Judgment**

Plaintiffs/Counter-Defendants filed a Reply to Defendants'/Counter-Plaintiffs' Response and addressed the breach of fiduciary claim, noting that Defendants focused on case law, but the evidence, and specifically, Dorothy's Will establish that JR is not a named beneficiary under the Will. They also contend the Will shows that SR is the only beneficiary named in the Marital Trust, so SR cannot owe a fiduciary duty to JR under the Marital Trust. Plaintiffs assert that the Descendants' Trust is only created after SR's death, and since SR is still alive, there is no Descendants' Trust, so he owes no fiduciary duty to JR under the Descendants' Trust. Plaintiffs argue that JR fails to address that SR has the right to distribute all income and principal to himself under the Family Trust and is specifically given the right to never make a distribution to any descendant, including JR. Plaintiffs contend that JR "jumps to a constructive trust" as a remedy but fails to identify SR's breach. Plaintiffs also assert that Defendants' only evidence is Exhibit I, the unsigned proposed Trust Termination Agreement, which they object to as being hearsay and unauthenticated. Plaintiffs argue that since they filed a No-Evidence Motion for Summary Judgment, JR must provide evidence of a fiduciary relationship for the

14

Marital Trust and Descendants' Trust but has not. Finally, they contend JR must provide some evidence of a breach of the Family Trust, which he failed to do and cannot do since SR can distribute all income and principal of the Family Trust to himself. Thus, they assert they are entitled to summary judgment on Defendants' breach of fiduciary duty counterclaim.

## 5. Contents of Dorothy's Will

Both parties submitted Dorothy's Will (or "trust instrument") as summary-judgment evidence. The Will was also the trust instrument governing the three trusts at issue. As previously noted, three trusts are created by Dorothy's Will: (1) the Marital Trust; (2) the Family Trust; and (3) the Descendants' Trust. The Marital Trust and the Family Trust were created upon Dorothy's death. As Dorothy's spouse, SR was the named Trustee and sole beneficiary of the Marital Trust. To fund the Marital Trust, the trust instrument instructs that the gift is an amount equal in value to the maximum federal estate tax marital deduction available to her estate minus the "value for federal estate tax purposes of all items" of Dorothy's "gross estate which will qualify for the marital deduction" that pass to SR "in a form qualifying for the marital deduction other than under this marital deduction provision" of the Will. The trust instrument further instructs that the gift that will fund the Marital Trust "may be satisfied only out of assets of my estate which qualify for the estate tax marital deduction." Under the Marital Trust, SR as Trustee "shall" during his

15

lifetime pay himself all income of the Marital Trust. It also allows SR as Trustee to pay principal to Dorothy's spouse (also SR) as the Trustee "may determine to be needed for [SR's] education, health, support and maintenance."

Dorothy's Will then provides that the "rest and residue" of her estate be used to create the Family Trust. The trust instrument gives the "rest and residue" of her estate to "her spouse" SR "as Trustee" of the Family Trust. With respect to the Family Trust, the trust instrument provides as follows,

> Trustee may pay so much of the net income and principal of this Trust to or for the benefit of my spouse as my Trustee may determine to be needed or required for the education, health, support and maintenance of my spouse or to pay any federal income or gift taxes imposed on my spouse. To the extent that the income from this Trust is not distributed to my spouse, my Trustee may distribute such income to my children (or their descendants) for their education, health, support and maintenance, all in the sole discretion of my Trustee. My Trustee shall add to this Trust's corpus any income not distributed. In making any distributions of income and principal, my Trustee may take into account funds available to my spouse and my children from other sources.

The Descendants' Trust is the last trust and is only created upon SR's death, as "created under [Dorothy's] spouse's Last Will and Testament[.]" Dorothy's Will instructs, "My Trustee shall, upon my spouse's death, combine the then-Trust properties of the Fulton Marital Trust and the Fulton Family Trust into one trust to be known as the James and Dorothy Fulton Descendants' Trust to be held, managed and disposed of, by the Trustee named in Article V[,]" which were her children as Co-Trustees. Dorothy instructs how the Descendants' Trust is to be distributed and

16

that all descendants "shall be eligible for educational assistance" then explains who shall be given priority. The trust instrument states that the Descendants' Trust shall be terminated twenty-one years after the death of the survivor of Dorothy and her spouse, and "[a]t that time, the then-remaining Trust Properties shall be distributed on a per capita basis to each of our then surviving descendants who were alive at the death of the survivor of myself and my spouse."

The trust instrument references plural "beneficiaries" and provides that Dorothy's children, including JR, are to be named successor Co-Trustees of all three Trusts if SR becomes unable or unwilling to serve. The trust instrument also states,

> My Trustee shall be held harmless for any error in judgment or discretion in the performance of the Trust, the investment and management of the Trust Properties, the expenditure of funds or the termination of the Trust. My Trustee shall not be liable for any act or omission unless the same shall be due to my Trustee's own gross negligence, bad faith or fraud.

The trust instrument requires the Trustee to provide an accounting to the beneficiaries "[a]s soon as possible after the close of each fiscal year and upon the termination of a Trust," and "[t]his accounting shall be presumed to be a correct and equitable determination and allocation of all expenses, income, distributions of principal, profits and losses, unless within thirty days after a beneficiary's receipt of such accounting my Trustee is notified in writing of any claimed error, misdetermination or misallocation."

17

## B. Standard of Review and Applicable Law

We review a trial court's decision to grant summary judgment de novo. *See Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015) (citation omitted). We view the evidence in the light most favorable to the nonmovant. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). In doing so, we indulge every reasonable inference and resolve any doubts against the motion. *See City of Keller*, 168 S.W.3d at 824. "Undisputed evidence may be conclusive of the absence of a material fact issue, but only if reasonable people could not differ in their conclusions as to that evidence." *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) (citation omitted).

A no-evidence motion for summary judgment "is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003) (citations omitted).

> A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.

*Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (citation omitted). To defeat a no-evidence summary judgment motion, the nonmovant must produce summary judgment evidence sufficient to raise a genuine issue of material

18

fact on each element of the claims challenged by the movant. Tex. R. Civ. P. 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

A party moving for traditional summary judgment has the burden of establishing there is no genuine issue of material fact as to at least one requisite element of the asserted cause of action and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Lightning Oil Co. v. Anadarko E & P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017) (citations omitted). When the trial court does not specify the grounds on which it granted summary judgment, we must affirm if any summary judgment grounds are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000) (citation omitted). If a defendant files a combined traditional and no-evidence summary judgment motion, we first review the judgment under the no-evidence standards of Rule 166a(i). *Ridgway*, 135 S.W.3d at 600; *Werth v. Johnson*, 294 S.W.3d 908, 909 (Tex. App.—Beaumont 2009, no pet.). Any claims surviving the no-evidence review are then reviewed under the traditional standard. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).

We "may not reverse a trial court's judgment without properly assigned error." *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 226 (Tex. 2022) (citing *Cent. Educ. Agency v. Burke*, 711 S.W.2d 7, 8 (Tex. 1986) (per curiam)). "When a trial court's order granting summary judgment does not specify the grounds

on which its order is based, the appealing party must negate each ground upon which the judgment could have been based." *Id.* (citations omitted); *see Nixon Fam. P'ship, LP v. Jet Lending, LLC*, No. 09-20-00201-CV, 2022 WL 3091548, at \*6 (Tex. App.—Beaumont Aug. 4, 2022, pet. denied) (mem. op.) (citation omitted). "A party may negate each ground by raising separate issues 'or asserting a general issue that the trial court erred in granting summary judgment and within that issue providing argument negating all possible grounds upon which summary judgment could have been granted.'" *Rosetta Res. Operating*, 645 S.W.3d at 227 (quoting *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied); *Tweedell v. Hochheim Prairie Farm Mut. Ins. Ass'n*, 1 S.W.3d 304, 309 (Tex. App.—Corpus Christi–Edinburg 1999, no pet.)). Generally asserting that the trial court erred in granting the motion for summary judgment may suffice to allow argument on all possible grounds that the summary judgment motion was granted, but if a party does not brief those arguments to the appellate court, then the appellate court cannot properly reverse summary judgment on those grounds. *Id.* (citing *Plexchem Int'l, Inc. v. Harris Cnty. Appraisal Dist.*, 922 S.W.2d 930, 931 (Tex. 1996) (per curiam); *Malooly Bros. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970); Tex. R. App. P. 38.1(i)).

Generally, the executor of an estate owes a fiduciary duty to the beneficiaries of the estate arising from the executor's status as trustee of the estate's

property. *See Humane Soc'y of Austin & Travis Cnty. v. Austin Nat'l Bank*, 531 S.W.2d 574, 577 (Tex. 1975); *Cahill v. Cahill*, No. 09-20-00206-CV, 2022 WL 318452, at *9 (Tex. App.—Beaumont Feb. 3, 2022, pet. denied) (mem. op.). "A trustee owes beneficiaries certain fiduciary duties." *Cardona v. Cardona*, No. 09-19-00118-CV, 2020 WL 2070160, at *5 (Tex. App.—Beaumont Apr. 30, 2020, no pet.) (mem. op.) (citing *Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996)). "Beneficiary" is defined as "a person for whose benefit property is held in trust, regardless of the nature of the interest." Tex. Prop. Code Ann. § 111.004(2). A settlor may modify the duties imposed on a trustee by the trust instrument. *See id.* § 113.051 (providing that a trustee shall administer trust in good faith, and absent contrary provisions in the Code or trust instrument, shall perform duties imposed at common law). "Generally, the elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages." *First United Pentecostal Church*, 514 S.W.3d at 220 (citations omitted); *Donalson v. Harrington*, No. 09-19-00286-CV, 2021 WL 3196970, at *5 (Tex. App.—Beaumont July 29, 2021, pet. denied) (mem. op.) (citations omitted).

JR sought to have SR provide an accounting of the trusts created by Dorothy's Will. Texas Trust Code section 113.151 allows for an accounting. *See* Tex. Prop. Code Ann. §113.151. That statute provides,

> (a) A beneficiary by written demand may request the trustee to deliver
> to each beneficiary of the trust a written statement of accounts covering

21

all transactions since the last accounting or since the creation of the trust, whichever is later. If the trustee fails or refuses to deliver the statement on or before the 90th day after the date the trustee receives the demand or after a longer period ordered by a court, any beneficiary of the trust may file suit to compel the trustee to deliver the statement to all beneficiaries of the trust. The court may require the trustee to deliver a written statement of account to all beneficiaries on finding that the nature of the beneficiary's interest in the trust or the effect of the administration of the trust on the beneficiary's interest is sufficient to require an accounting by the trustee. However, the trustee is not obligated or required to account to the beneficiaries of a trust more frequently than once every 12 months unless a more frequent accounting is required by the court. . . .

(b) An interested person may file suit to compel the trustee to account to the interested person. The court may require the trustee to deliver a written statement of account to the interested person on finding that the nature of the interest in the trust of, the claim against the trust by, or the effect of the administration of the trust on the interested person is sufficient to require an accounting by the trustee.

*Id*. The Property Code also outlines the contents of an accounting:

A written statement of accounts shall show:
(1) all trust property that has come to the trustee's knowledge or into the trustee's possession and that has not been previously listed or inventoried as property of the trust;
(2) a complete account of receipts, disbursements, and other transactions regarding the trust property for the period covered by the account, including their source and nature, with receipts of principal and income shown separately;
(3) a listing of all property being administered, with an adequate description of each asset;
(4) the cash balance on hand and the name and location of the depository where the balance is kept; and
(5) all known liabilities owed by the trust.

*See id.* § 113.152.

JR sought to have a receiver appointed under Texas Civil Practice & Remedies Code section 64.001 and Texas Property Code section 114.008. As applicable here, section 64.001 provides,

> (a) A court of competent jurisdiction may appoint a receiver:
> (1) in an action by a vendor to vacate a fraudulent purchase of property;
> (2) in an action by a creditor to subject any property or fund to his claim;
> (3) in an action between partners or others jointly owning or interested in any property or fund;
> . . . or
> (7) in any other case in which a receiver may be appointed under the rules of equity.
> (b) Under Subsection (a)(1), (2), or (3), the receiver may be appointed on the application of the plaintiff in the action or another party. The party must have a probable interest in or right to the property or fund, and the property or fund must be in danger of being lost, removed, or materially injured.

Tex. Civ. Prac. & Rem. Code Ann. § 64.001. Additionally, Texas Property Code section 114.008 provides,

> (a) To remedy a breach of trust that has occurred or might occur, the court may:
> (1) compel the trustee to perform the trustee's duty or duties;
> (2) enjoin the trustee from committing a breach of trust;
> (3) compel the trustee to redress a breach of trust, including compelling the trustee to pay money or to restore property;
> (4) order a trustee to account;
> (5) appoint a receiver to take possession of the trust property and administer the trust;
> (6) suspend the trustee;
> (7) remove the trustee as provided under Section 113.082;
> (8) reduce or deny compensation to the trustee;
> (9) subject to Subsection (b), void an act of the trustee, impose a lien or a constructive trust on trust property, or trace trust property

23

of which the trustee wrongfully disposed and recover the property or the proceeds from the property; or

(10) order any other appropriate relief.

(b) Notwithstanding Subsection (a)(9), a person other than a beneficiary who, without knowledge that a trustee is exceeding or improperly exercising the trustee's powers, in good faith assists a trustee or in good faith and for value deals with a trustee is protected from liability as if the trustee had or properly exercised the power exercised by the trustee.

Tex. Prop. Code Ann. § 114.008.

Receivership is an extraordinary remedy that is applied cautiously. *See Elliott v. Weatherman*, 396 S.W.3d 224, 228 (Tex. App.—Austin 2013, no pet.); *see also Estate of Benson*, No. 04-15-00087-CV, 2015 WL 5258702, at *5 (Tex. App.—San Antonio Sept. 9, 2015, pet. dism'd) (mem. op.). "Even if a specific statutory provision authorizes a receivership, a trial court should not appoint a receiver if another remedy exists at law or in equity that is adequate and complete." *Id.* (citations omitted). One circumstance warranting appointment of a receiver is if the court finds a breach of trust has occurred or may occur. *See* Tex. Prop. Code Ann. § 114.008(a)(5); *Estate of Benson*, 2015 WL 5258702, at *5.

## C. Analysis

### 1. Breach of Fiduciary Duty

On appeal, Appellants primarily address the duty element of the breach of fiduciary duty claim, specifically contending that SR owed JR a duty since he is a beneficiary under the Estates Code. We agree that under the trust instrument, JR is

24

a beneficiary, as that term is broadly defined. *See* Tex. Prop. Code Ann. § 111.004(2). We also agree that as Trustee, SR would generally owe certain fiduciary duties to JR and the other beneficiaries. *See Huie*, 922 S.W.2d at 923; *Cardona*, 2020 WL 2070160, at *5. That said, Dorothy as the settlor, was free to modify those duties in the trust instrument, which she did. *See* Tex. Prop. Code Ann. § 113.051. The trust instrument instructs that the "Trustee shall be held harmless for any error in judgment or discretion in the performance of the Trust, the investment and management of the Trust Properties, the expenditure of funds or the termination of the Trust." The trust instrument also instructs that the "Trustee shall not be liable for any act or omission unless the same shall be due to my Trustee's own gross negligence, bad faith or fraud."

In their No-Evidence Motion for Summary Judgment, Plaintiffs/Counter-Defendants challenged that: (1) JR and SR had a fiduciary relationship; (2) SR breached his fiduciary duty to JR; and (3) SR's breach (a) proximately caused injury to the Plaintiff; or (b) resulted in a benefit to SR. *See First United Pentecostal Church*, 514 S.W.3d at 220 (outlining elements of breach of fiduciary duty claim). Once the movants challenged these elements with their No-Evidence Motion for Summary Judgment, the burden shifted to JR as the nonmovant to present some evidence creating a genuine issue of material fact on each challenged element. *See* Tex. R. Civ. P. 166a(i); *Ford Motor Co.*, 135 S.W.3d at 600. In the trial court, the

25

unsigned Trust Termination Agreement cited by JR as evidence did not constitute evidence of a breach of duty to him or show that he was damaged.[3] There was no affidavit testimony or other evidence that by attempting to terminate the trust SR breached a duty or that doing so caused damage to JR. *See First United Pentecostal Church*, 514 S.W.3d at 220.

On appeal, JR focuses on the first element and the existence of a fiduciary relationship by arguing he is a beneficiary. Other than asserting that as a beneficiary, JR is entitled to an accounting and to request an appointment of a receiver, which we address separately below, Appellants did not challenge the remaining elements of his breach of fiduciary duty claim on appeal. Appellants do not specify what duty SR allegedly breached, how SR breached a duty to JR, or how any breach by SR proximately caused damage to JR or benefitted SR. *See id.* The trial court's order did not specify the reason it denied the breach of fiduciary duty claim, other than to say that the Descendants' Trust had not yet been created since SR is alive. Since JR failed to negate each ground on appeal that could form the basis of the summary judgment on the breach of fiduciary duty claim, we overrule issue two as it relates

---

[3]In the Motion for Summary Judgment, Plaintiffs/Counter-Defendants attached the "Assignment, Distribution, and Termination Agreement for the Estate of Dorothy C. Fulton, Deceased" which was executed on February 1, 2022. JR did not complain in his Response to the Motion for Summary Judgment and does not complain on appeal that this executed document supported his claims. Rather, he focuses on the unsigned Trust Termination Agreement attached to his Response.

to the breach of fiduciary duty claim. *See Rosetta Res. Operating*, 645 S.W.3d at 226 (explaining that when a trial court's order granting summary judgment does not specify the grounds, the appealing party must negate each ground on which the judgment could have been based); *see Nixon Fam. P'ship*, 2022 WL 3091548, at *6 (stating same).

## 2. Request for Accounting

In support of issue two, JR asserts that as a beneficiary, he had the right to demand an accounting, and SR failed to provide one, so summary judgment was improper. In their Traditional Motion for Summary Judgment, Plaintiffs/Counter-Defendants contend that JR has "no legal basis to demand an accounting" and assert that SR provided an accounting, noting the tax returns, and JR never asked for anything else. As we have explained above, the summary judgment record shows JR is a beneficiary as the Property Code defines that term. *See* Tex. Prop. Code Ann. § 111.004(2). Consistent with the Property Code, the trust instrument requires SR, as Trustee, to provide an annual accounting. *See id.* § 113.151 (allowing a beneficiary to request by written demand an accounting covering all transactions since the last accounting or since the creation of the trust, whichever is later and allowing a beneficiary to file suit to compel the trustee to provide a written statement of accounts). Yet the instrument says that if a beneficiary fails to object to an accounting within thirty days of receiving it, the accounting shall be presumed

27

correct. JR responds that SR failed to provide an accounting at all and instead, SR only provided his personal tax returns, which JR claims show that SR took property for himself that was meant for the Trust.

Even if SR took Trust property for himself, the trust instrument expressly allowed for him to do so under the Marital Trust and under the Family Trust. This included distributing Trust income and Trust principal to himself at his sole discretion. That said, and as we have explained, JR qualifies as a beneficiary. *See id.* § 111.004(2). As a beneficiary, JR could demand and receive an accounting, because the trust instrument requires SR to provide an annual accounting, and the Property Code allows for a beneficiary to demand an annual accounting. *See id.* § 113.151 (allowing a beneficiary to request by written demand an accounting covering all transactions since the last accounting or since the creation of the trust). Likewise, the record shows that the documents SR provided do not meet the statutory requirements of an accounting. *See id.* § 113.152 (outlining contents of an accounting).

Since Plaintiffs/Counter-Defendants failed to meet their traditional summary judgment burden of conclusively negating that JR was a beneficiary under the Family Trust, the trial court improperly granted summary judgment on JR's request for an accounting. *See* Tex. R. Civ. P. 166a(c). We sustain issue two in part as it relates to JR's demand for an accounting for the Family Trust.

28

## 3. Receivership

Also, in support of issue two, JR claims that as a beneficiary, he requested appointment of a receiver in part, under Texas Property Code section 114.008 and that SR failed to address his request for appointment of a receiver under section 114.008 in the No Evidence Motion for Summary Judgment. *See* Tex. Prop. Code Ann. § 114.008. Therefore, he contends summary judgment on his request for appointment of a receiver under section 114.008 was improper. We agree. Since Plaintiffs/Counter-Defendants failed to move for summary judgment on JR's request for appointment of a receiver under Texas Property Code section 114.008, the trial court improperly granted more relief than requested. *See Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997) (explaining that summary judgment must stand or fall on grounds stated in the motion and holding that where movant did not raise ground in motion, it was not entitled to summary judgment on that claim); *Ace Real Prop. Invests., LP v. Cedar Knob, Invests., LLC*, No. 09-19-00375-CV, 2022 WL 120016, at *13 (Tex. App.—Beaumont Jan. 13, 2022, pet. denied) (mem. op.); *see also* Tex. R. Civ. P. 166a(i). We sustain issue two as it pertains to JR's request for appointment of a receiver under Texas Property Code section 114.008. We do not decide whether JR is entitled to the appointment of a receiver

under that section, only that the trial court improperly granted summary judgment on a ground not stated in the Motion.[4]

Still, on appeal, JR fails to address the trial court's summary judgment under Texas Civil Practice & Remedies Code section 64.001. *See* Tex. Civ. Prac. & Rem. Code Ann. § 64.001 (outlining requirements for appointment of a receiver). In the trial court, Plaintiffs/Counter-Defendants moved for no-evidence summary judgment on the claim for appointment of a receiver under section 64.001 and specifically challenged each element. Since Appellants fail to challenge on appeal the trial court's summary judgment on JR's request for appointment of a receiver under section 64.001, we must affirm the trial court's judgment on that ground. *See Rosetta Res. Operating*, 645 S.W.3d at 226; *Nixon Fam. P'ship*, 2022 WL 3091548, at *6. We overrule issue two as it pertains to JR's request for appointment of a receiver under Texas Civil Practice & Remedies Code section 64.001.

## III. ISSUES ONE AND THREE: JURY TRIAL AND PROPERTY DISPUTE

In issues one and three, Appellants complain about the jury's verdict. In issue one, Appellants argue that Huelsman's admission at trial that she did not exercise a claim of right exclusive to others required a finding inconsistent with the verdict as

---

[4]Although unclear, the trial court's oral ruling appeared to dispose of all receivership claims. In remanding this case, we are doing so solely because the trial court granted relief not expressly stated in the Motion for Summary Judgment to the extent it disposed of the section 114.008 receivership claim.

a matter of law, which we interpret as a challenge to the legal sufficiency of the evidence supporting the jury's answer to Question 1. In issue three, Appellants essentially assert that JR was entitled to an easement based on the subdivision plat, and that since this action was filed as a declaratory judgment action, the trial court should have decided the issue as a matter of law. In response to issue three, Appellees contend that Appellants failed to submit a proposed question in the jury charge regarding the issue of easement based on the replat, and thus waived that issue.

## A. Trial Evidence and Jury Charge

### 1. Testimony of Cheryl Huelsman

Huelsman testified that she purchased the property at issue and has lived on it since 1982. Her General Warranty Deed references Lots 8 and 9 of Block 31 in the Rose City Subdivision. When she purchased the property, she did not have a survey, but she believed she owned all the tracts referenced as C and D in the map, which we have included at the start of this opinion and was admitted as evidence in the trial court. She testified that JR now claims he owns Tract D, beginning where she believed was the middle of her property.

In 1982, Huelsman put a mobile home on the property. Huelsman explained that she used all of Tracts C and D from boundary to boundary. She mowed it, cleared it, planted trees on it, and she identified the location of her mobile home before Hurricane Harvey, which, in part, sat on Tract D. Huelsman testified that her

mobile home sat on what is the disputed area from 1982 until 2017 or 2018, when Hurricane Harvey hit and wiped everything out. Huelsman also testified that her water line and electrical lines ran across the disputed property and have been there since 1982. She explained that the lines were installed in the 1980s, and if people drove up, they would have seen her house sitting there for 30 or 35 years. There were photographs admitted that were taken in 2008 of her family members raking leaves in the disputed area. There were also photographs that showed her mobile home sitting across Tracts C and D.

From the 1980s and early 1990s until Hurricane Harvey, Huelsman never saw anyone using the driveway across SR's property but her and her son, who also lived there. Huelsman testified that she never saw JR use the driveway to get to land behind them, and specifically denied that he used it in the 1980s, 1990s, 2000s or through Hurricane Harvey.

Huelsman testified that from the time she bought the property in 1982, she used both Tracts C and D as if they were her own. Between 1982 and June 2019, nobody made a claim for ownership to Tract C or D, except her; she was the only one who mowed, planted trees and did anything with Tracts C and D between 1982 and 2019. For thirty-four years, she would have excluded others and not let them drive in there. She explained that she initially tried to exclude JR, and it was not until 2019, when he came back with a deed that she let him through.

Huelsman also testified that she always paid the taxes in full and believed she paid taxes on both tracts every year beginning in 1982 through 2018. She also discussed an appraisal printout. Huelsman explained that she was paying taxes on everything, but they dropped in half when JR took the property, although she later said she did not know if she was paying taxes on the right-of-way. Huelsman testified that from 1982 until 2018, she paid taxes on Tracts C and D.

She never saw JR come anywhere near the driveway until the dispute arose after Hurricane Harvey. After Hurricane Harvey, she could not afford to rebuild everything, but she built a tiny house near her Magnolia Tree on the right side of the property and left a lot of it open "until she could do better." The first contact she had with JR was after Hurricane Harvey, right after she moved back into her tiny home. He told her that the debris in her backyard was on his property and offered to move it. She had no idea what he was talking about, because she had always mowed the property and taken care of the left side of the property. At the time of the debris incident, JR never told her he believed he owned the left side of the property. Around 2019, JR wanted to drive down past where the end of her house used to be, but she and her son parked on Tract D at the driveway, so JR could not go all the way to the back. After that, JR told her that he was putting a fence on it and that he bought it. Huelsman testified that she asked him how he could buy it, told him she paid for it, and said she had been there all those years. JR responded that he bought it from the

33

Baileys and had a deed, which he showed her. Huelsman testified she did not know what to do, so she let him put a fence up but told him not to do it in the middle of her yard, then she put a privacy fence up next to it. When asked why she did what JR said in 2019 if she believed she owned Tracts C and D for thirty-five years, Huelsman answered that she "felt very intimidated," "harassed," and "bullied." She explained she had been away from her home for seven months after Harvey and was "trying to come home[,]" and "couldn't fight him[,] because she "didn't have the means." She testified that despite that, she believed she owned it all.

Huelsman testified that while she believed lots 8 and 9 were the whole area, she learned she was mistaken through JR, although he never showed her the maps. Even so, she never looked at the maps to try to determine where the boundaries were to lots 8 and 9. She agreed it was more out of confusion than trying to take somebody else's land. Huelsman testified she did not intend to take someone else's land or the right-of-way. Huelsman said that when JR showed her the deed, she thought he owned it and bought it – whatever it was. Nobody came to her before 2018 or 2019 to say that she had taken their land.

She testified that in 1982, SR gave her permission to cross his land and built her a driveway, so she could get to her home. The evidence showed this driveway was through Tract A. She explained that the lawsuit happened, because SR

34

approached her as a neighbor and said he wanted to help Huelsman get her land back from JR.

## 2. Testimony of Diana Daigle

Diana Daigle testified that she is JR's sister and SR's daughter. She has knowledge of the property at issue and helps SR with J&D. During Daigle's testimony, she discussed an appraisal district map previously admitted into evidence showing the disputed parcels and many surrounding parcels. She explained that she color coded the map to show who owned each tract.[5] The map showed that JR owned many tracts on the map adjacent to various roadways and adjacent to the "swampland" property he purchased behind Tracts C and D. Daigle testified that by creating the map, she attempted to show all the land that JR owned and that he could access his land other ways. She explained that the property JR owns goes all the way to the service road, to the highway, and along Boxwood Street. Daigle testified that although JR wants an easement through SR's land, JR owns the surrounding property and could access the property in the back. Although JR probably could not drive to the back property, he could walk to it.

Daigle told the jury she went to the appraisal district in 2019 to determine why Huelsman's taxes decreased in 2019. She explained that JR buying the land

---

[5]Daigle testified that JR owns the property highlighted in pink and green, Huelsman owns the property highlighted in blue, and the orange property is the most recent property JR bought, which is the disputed parcel.

decreased the taxes, and for the first time, the appraisal district broke it into two tracts. Before that, it was treated as a single tract. Daigle denied the taxes decreased because of Hurricane Harvey, instead the appraisal district told her it decreased because the land was no longer Huelsman's. So, Huelsman had been paying taxes on all of it, then went to paying half of it or less than half. For one of JR's tracts, the only drivable access is through the disputed tract he acquired. Nevertheless, Daigle testified that to access JR's property, you can "go all the way around it." Daigle agreed that it was easy to find the boundary between lot 8 and 9 at the appraisal district, which Huelsman could have figured out.

**3. Testimony of James Fulton, Jr.**

JR testified that he is retired but uses JJ&A Partnership for property ownership purposes in Rose City. Some property he owns is raw and "swampy" while other property is commercial. Prior to 2018 or 2019, JR did not claim ownership of any of Tract D, the disputed property in question, but he now claims ownership through the Quitclaim Deed he acquired in 2019.

JR agreed that the color-coded map accurately reflects the land he and JJ&A own, as did his sister's testimony. JR owns Tract B next to Boxwood Street, and he uses Tract B as an RV park. JR testified at length about the different parcels he owned, which ones constituted "swampy" areas and where the high ground was. He

36

has property bordering Boxwood Street, Oriole Street, and some that borders the freeway service road.

Again, JR now claims he owns Tract D, and he testified he acquired it by quitclaim deed.[6] JR testified that in June 2019, he obtained the Quitclaim Deed from the Baileys. According to JR, when he obtained the Quitclaim Deed from the Baileys, he only obtained the Tract comprised of the abandoned road right-of-way, and he is not claiming Lots 8 and 9, which comprise Tract C. JR explained that initially Tract D was not for sale; JR sought the Baileys out, because he "knew the history of the subdivision." He agreed the language in the Quitclaim Deed did not say "sells" or "conveys" only that it says "quitclaims[,]" and he assumed the Baileys would not want to give him more than they owned. He testified that in May 2020, after he obtained the Quitclaim Deed, he moved a trailer to the back of Tract D for Laura Travis to live on the disputed property in question. JR explained that he bought the disputed tract to access his other property in the back, and he obtained Huelsman's permission before moving Laura's trailer onto the property. JR testified that Huelsman was deeded Lots 8 and 9 comprising Tract C, and there was an abandoned roadway next to her lots. According to JR, nobody had a deed to the abandoned roadway until he obtained the Quitclaim Deed in 2019. JR said that

---

[6]JR testified he wanted the property in "orange" on the color-coded appraisal district map, which the record shows was Tract D. We have referred to it as Tract D for purposes of consistency, which is the disputed property in question.

Huelsman had put her mobile home on the abandoned roadway when she originally purchased Lots 8 and 9, mowed the rest, planted trees, and her kids played there.

JR testified that he could not go from Tract B to Tract D, instead he had to go across SR's property the same way that Huelsman accesses her lots 8 and 9. JR wants an easement across SR's property from Boxwood to Tract D, then from there to his property in the back and felt "there's always been an easement there." Although he cannot go from Tract B to Tract D, he agreed he had other ways to use other tracts he owned that have freeway access to get to his property. JR agreed that from Tract B, he had multiple ways of accessing public roads and highway. He acquired tract 310966, which the parties described as the "swampy" tract, in June 2011 which is north of and adjacent to the disputed property in question. The color-coded appraisal map shows that the 310966 tract is surrounded by other tracts owned by JJ&A that also have roadway access. Before June 2011, JR did not own any property to the north of the disputed property in question. He explained that he needs the disputed Tract D to access this "swampy" property, because you cannot drive to it, and it is "infested" with snakes and alligators. JR agreed the property he purchased in 2011 was swampland, and he knew that when he bought it.

JR said that SR gave him Tract B adjacent to Boxwood Street, and at one time, J&D owned all the real property on Tracts A and B. In 1984, J&D purchased land

38

from the Baileys.[7] The land SR bought from the Baileys was a twelve-acre tract that JR and SR split between them with JR keeping five acres, and SR keeping seven acres.

Two maps were attached to JR's Quitclaim Deed, one labeled East Beaumont Oil & Gas Company Township Subdivision and it shows some roadways or rights-of-way. JR testified the maps show the lots owned by Huelsman and next to it a shaded area with no lots, Tract D, which JR said indicates "a platted roadway." A portion of the road that JR wants to cross runs across Tract A, owned by J&D, SR's company. According to JR, Huelsman has used "the full 60-foot easement" to access her property since the 1980s, and he claimed multiple people also used it. JR put gates in abutting "the easement" or "road right-of-way" on J&D's Tract A, which he says he used to access his RV park on Tract B, although he denied that he wanted the easement to access Tract B.

JR said he was familiar with the property where Huelsman lived, and he knew that Huelsman had a house in the middle of the property in the 1980s and 1990s. JR also knew that Huelsman had made improvements to the disputed property in question, and he believed his boundary was "[v]ery close to the middle" but also acknowledged that she mowed, planted trees, and maintained the whole property.

---

[7]JR alternatively claimed this twelve-acre tract was purchased by J&D and SR before J&D was formed.

39

Although he did not own Tract 310966, behind the disputed Tract D, until 2011, he said that he fished and hunted there and said that "we all" trespassed and noted the plat shows a road that goes completely through there. JR testified that prior to 2011, he could walk across Huelsman's property to Tract 310966. JR could not say that he drove through the disputed property in question, and again agreed that Huelsman mowed it and used it. Even so, later in his testimony JR disagreed that Huelsman used it all as her own before Harvey. JR claimed he put the first fence up in 2018 or 2019. JR said that nobody knew exactly where the property line was, but it was "common knowledge" the road right-of-way went through there.

**4. Testimony of James Fulton, Sr.**

SR testified that he had knowledge of the roads and plats discussed at trial. He explained that in the 1960s, Rose City was formed, and when that happened, the City accepted all existing roads, but for non-existing roads, "they didn't ever fool with it[,]" and they were "all abandoned."[8] SR said that if a road was already there, Rose City took it, but anything else that was platted that was never developed, went away, including the plat and abandoned roadway at issue. SR testified that Boxwood

---

[8]We recognize that such evidence is generally established through expert testimony, yet no party objected to this evidence. *See Vrazel v. Skrabanek*, 725 S.W.2d 709, 711 (Tex. 1987) (noting that expert testimony of surveyor established recorded location of platted easement). Additionally, we note that neither the County nor the City were parties to this lawsuit.

40

Street used to be a private road, but he gave it to the County, so they could grade it; however, he had not given the County the driveway at issue.

SR testified that in the 1980s, he helped Huelsman clear all her property; he had a dozer and dump truck, and her husband rented a backhoe. SR testified that when he helped Huelsman clear the property, it included all of Lots 8 and 9 and the abandoned roadway for her to use. SR also fixed the road where they came in across his property. Since SR owned all the land on Tracts A and B, it cut his in half. He decided to give part of the land to JR, but when he did, JR put up gates and a fence. When SR asked him why he put the gate up, JR told him he wanted to go through SR's property with the cars and RVs. SR told JR he would not allow that on his property. He testified that he already gave JR the land, but JR wanted more.

SR told the jury that when he put the road in for Huelsman, he owned all that land, twelve or thirteen acres, and bought it from Bailey. He bought all of Tract A, all the way to the line of Tract D, which came by deed from the Baileys but was unsure if the deed was in his name or J&D's. When SR acquired the property, it was a unified tract, but at some point, he divided it and gave some to JR. SR testified that Lots 8 and 9 that Huelsman purchased were never his.

When SR gave Tract B to JR several years back, JR put up gates to have more area to "run in and out of that [RV] park there, trying to take more land away from [Tract] A." SR testified that he did not give JR permission to use Tract A but gave

41

him Tract B. When SR refused JR permission, JR "took it" and moved a trailer on Huelsman's property.

SR testified that Huelsman used the land peaceably all those years, until this happened with JR. He did not understand why JR wanted a little piece of land to get to the big piece; if JR did not like it, he did not have to buy the bigger piece. SR gave Huelsman permission to drive through Tract A, which was his land. SR said that Huelsman was using Tract D, and "everyone" in Rose City uses the vacant streets, and when they use it long enough, they feel like its theirs. The map from the 1900s shows the roads for access as the tracts were to be divided, which SR knew when he purchased the property. Nevertheless, SR testified that people did not use that access road until Huelsman began using it, and otherwise everyone else just found other ways to access their property without using the old road.

Although SR felt that Tract D belonged to Huelsman, he said she was not adversely possessing it from anyone, since it did not belong to anyone. He said there was nobody there to receive any kind of notice who would claim to own that property. SR testified that he was helping Huelsman get Tract D, because she is his neighbor.

5. Testimony of Laura Travis

Laura Travis testified that she recorded the conversation with SR that was played for the jury and can be heard on the recording. She explained she made the

recording, because when she is nervous, she forgets things. Travis also testified that SR admitted on the recording that JR was landlocked.

She considered SR and JR family friends and had known them her whole life but was caught in the middle. Travis is JR's tenant and "begged" him to let her move to the back since it was quiet, but he was not going to until he spoke with Huelsman about it. When Travis moved in, Huelsman never objected and never told her it was her land. Travis's contact with the property has only been since 2018.

**6. Documentary Evidence and Exhibits**

Among other things, evidence admitted at trial included: various maps; subdivision plats; Huelsman's General Warranty Deed; JR's Quitclaim Deed dated 2019; various photographs of the property including those showing Huelsman's mobile home placed on Tracts C and D; a color-coded appraisal district map; showing the parcels the parties owned, including surrounding tracts owned by JR; and the recorded conversation between Travis and SR where SR says that Huelsman is landlocked.

**7. Motions for Directed Verdict and Objections to the Jury Charge**

Plaintiffs and Defendants each moved for directed verdict after the close of evidence. Plaintiffs moved for directed verdict on Defendants' claim for implied easement by necessity. They argued that no evidence supported the three elements required to establish an easement by necessity but primarily focused on the third

43

element. Plaintiffs contended that there was no evidence that the necessity for the easement existed when the estates were severed and no evidence that all three properties were owned by the same person or when they were severed. The defense responded that they put on evidence of the requisite elements, including the maps and plats. They noted that Huelsman needed an easement, or she would be landlocked, which they claimed supported their need for an easement. The Defendants moved for directed verdict on Plaintiffs' adverse possession claim. They asserted adverse possession requires a claim of right, which is defined to include intention, and noted that Huelsman testified she had no intention to make the property her own. The trial court denied both motions for directed verdict.

With respect to the Jury Charge, Plaintiffs did not submit any questions but objected to the submission of Question 2 regarding the implied easement by necessity. Plaintiffs asserted the evidence was insufficient to submit this question. They argued the "plats themselves were evidence of a plat" but not evidence of when the properties were owned, when they were severed or whether a necessity existed at the time of severance. The trial court overruled Plaintiffs' objection to Question 2. Defendants objected to the submission of Question 1, arguing there was no evidence of "claim of right" which required intent, and the trial court overruled that objection. The Defendants likewise did not submit any proposed questions that were refused.

## B. Issue One: Adverse Possession

In issue one, Appellants argue that Huelsman admitted at trial that she did not exercise a claim of right exclusive to others, which required a finding inconsistent with the verdict as a matter of law. They challenge the legal sufficiency of the evidence supporting the jury's answer to Question 1 and specifically the "claim of right" and "hostile" elements.

### 1. Standard of Review and Applicable Law

"Challenges to the legal sufficiency of the evidence are either 'no evidence' challenges or 'matter of law' challenges, depending on which party bore the burden of proof at trial." *Jefferson Cnty. v. Nguyen*, No. 09-13-00505-CV, 2015 WL 4597560, at *8 (Tex. App.—Beaumont July 31, 2015, no pet.) (mem. op.) (citation omitted). A party challenging the legal sufficiency of the evidence to support an adverse finding on which he did not have the burden of proof at trial must demonstrate no evidence supports the adverse finding. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 318 S.W.3d 194, 215 (Tex. 2011); *Nguyen*, 2015 WL 4597560, at *8; *see also Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014). When reviewing legal sufficiency, we credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 827. Evidence is legally sufficient if it enables fair-minded people to reach the verdict under review. *Id*. We consider all the evidence "'in the

45

light most favorable to the party in whose favor the verdict has been rendered,'" and "'every reasonable inference deducible from the evidence is to be indulged in that party's favor[.]'" *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017) (quoting *Merrell Dow Pharms.*, 953 S.W.2d at 711).

> A legal sufficiency challenge will be sustained when the record confirms either: (a) complete absence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact.

*Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (citing *Keller*, 168 S.W.3d at 819); *see also Crosstex N. Tex. Pipeline, LP v. Gardiner*, 505 S.W.3d 580, 613 (Tex. 2016) (citations omitted).

As the sole judges of the witnesses' credibility and the weight to give their testimony, the jury may choose to believe one witness and disbelieve another. *City of Keller*, 168 S.W.3d at 819; *Endeavor Grp., LLC v. Kongsberg Power Products Sys. I, LLC*, No. 09-21-00300-CV, 2024 WL 4374979, at *12 (Tex. App.—Beaumont Oct. 3, 2024, pet. denied) (mem. op.). "We will uphold the jury's finding if more than a scintilla of competent evidence supports it." *Herrera v. Wendell Legacy Homes, LLC*, 631 S.W.3d 441, 451 (Tex. App.—Beaumont 2021, no pet.) (citing *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009)).

Huelsman claimed adverse possession based on the ten-year and twenty-five-year statutes. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.026–.028. The twenty-five-year statute provides,

> A person, regardless of whether the person is or has been under a legal disability, must bring suit not later than 25 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses or enjoys the property.

*Id.* § 16.027; *see also King Ranch*, 118 S.W.3d at 756 (citation omitted).

"Under Texas law, adverse possession requires 'an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person.'" *Tran v. Macha*, 213 S.W.3d 913, 914 (Tex. 2006) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 16.021(1)). Building a structure on property may be sufficient evidence of adverse possession. *See id.* at 915; *City of El Paso v. Fort Dearborn Nat'l Bank*, 74 S.W. 21, 23 (Tex. 1903). "The statute requires visible appropriation; mistaken beliefs about ownership do not transfer title until someone acts on them." *Tran*, 213 S.W.3d at 915 (citing *Bywaters v. Gannon,* 686 S.W.2d 593, 595 (Tex.1985)). One does not require an intention to dispossess the rightful owner, or even know that there is one for the use to be hostile. *See id.*; *Calfee v. Duke*, 544 S.W.2d 640, 642 (Tex. 1976). That said, a party must have "an intention to claim property as one's own to the exclusion of all others; '[m]ere occupancy of land without any intention to

47

appropriate it will not support the statute of limitations.'" *Tran*, 213 S.W.3d at 915 (quoting *Ellis v. Jansing*, 620 S.W.2d 569, 571 (Tex.1981)) (other citation omitted). "A limitation title once consummated, is as full and absolute as any other perfect title, and it is not lost by a subsequent oral statement by the limitation owner that he never intended to claim by limitations." *Republic Nat'l Bank of Dall. v. Stetson*, 390 S.W.2d 257, 262 (Tex. 1965).

**2. Analysis**

Appellants contend that Huelsman's statement she did not intend to take someone else's land and only mistakenly believed she owned the disputed Tract D constituted an admission that defeats her adverse possession claim. We disagree. This argument disregards other evidence in the record.

Although Huelsman testified she believed the property was hers and did not mean to take someone else's land, she also testified she used the tract as her own, and she would exclude all others. She testified that she initially blocked JR by blocking the drive into the property with vehicles and only capitulated to his claim when he produced a Quitclaim Deed in 2019. Even so, she testified that she felt "bullied" and "harassed" by him. Uncontradicted evidence showed that in 1982, Huelsman moved a mobile home onto the disputed Tract D, and it remained there until Hurricane Harvey destroyed it in 2017. Other evidence showed she used the

entire tract like it was her own, including mowing it, maintaining it, and planting trees on it.

Appellants cite *Tran v. Macha* for the proposition that where neighbors were mistaken about who was the true owner, the use was not hostile. *See* 213 S.W.3d at 914. Critical to that decision, and distinguishable from this case, the party took no action and the Court noted the buildings were already in place before the party moved onto the property. *See id.* at 915. Here, the parties do not contest that Huelsman put the structure (her mobile home) on the disputed property. *See id.* at 915; *City of El Paso*, 74 S.W. at 23. In other words, even if her belief was mistaken, she acted on it. *See Tran*, 213 S.W.3d at 915 (noting mistaken beliefs about ownership do not transfer title *until* someone acts on them). Huelsman's statement that she did not intend to take the land from someone does not establish conclusively her possession was not hostile or that she had no claim of right, since that is not required. *See id.* What is required is "an intention to claim property as one's own to the exclusion of all others[.]" *See id.* Neither will any statement made by Huelsman after limitations is run ruin her claim that she adversely possessed the property. *See Stetson*, 390 S.W.2d at 262. Her peaceable possession of the property began in 1982, and a twenty-five-year statute of limitations would have expired in 2007. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.027; *King Ranch*, 118 S.W.3d at 756. Appellants'

argument that actions or conduct after this time expired defeated her adverse possession claim as a matter of law lacks merit.

The jury was free to resolve any conflicts in the testimony and weigh the witnesses' credibility. *See City of Keller*, 168 S.W.3d at 827; *Endeavor Grp.*, 2024 WL 4374979, at *12. Considering the evidence in the light most favorable to the jury's finding, we conclude more than a scintilla of evidence supports the jury's finding. *See Tanner*, 289 S.W.3d at 830; *Herrera*, 631 S.W.3d at 451. Since Appellants have failed to show that no evidence supports the jury's finding that Huelsman adversely possessed the disputed tract, we overrule issue one. *See Graham Cent. Station*, 442 S.W.3d at 263; *Emerald Oil & Gas*, 318 S.W.3d at 215; *Nguyen*, 2015 WL 4597560, at *8.

## C. Issue Three: Easement

In issue three, Appellants assert that Huelsman's and J&D's failure to replat is a basis the trial court should have used to grant JR's request for an easement where the easement tract was platted and where JR relied on the recorded plat. They also contend that since this action was filed as a declaratory judgment action, the trial court should have decided the issue as a matter of law. In response to issue three, Appellees contend that Appellants failed to submit a proposed question in the jury charge regarding the issue of easement based on the replat.

## 1. Standard of Review and Applicable Law

"When the challenge is to an adverse finding on an issue for which the appellant had the burden of proof at trial, the appellant must show on appeal that, as a matter of law, the evidence establishes all vital facts in support of the issue." *Union Pacific R. Co. v. Cezar*, 293 S.W.3d 800, 807 (Tex. App.—Beaumont 2009, no pet.) (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001)). We give the same deference on credibility determinations to the jury as outlined in issue one, above. Whether a property owner is entitled to an easement by necessity is a question of law, although underlying factual issues may need to be resolved to reach the legal question. *Staley Fam. P'ship, Ltd. v. Stiles*, 483 S.W.3d 545, 584 (Tex. 2016). A grantor's intent to dedicate a public right of way is generally a fact question. *See Viscardi v. Pajestka*, 576 S.W.2d 16, 19 (Tex. 1978).

Objections to a jury charge should be made before the charge is read to the jury. *See* Tex. R. Civ. P. 272 (requiring objections to be made before charge is read to the jury or stating that they are waived). A party may request questions for submission in writing, but those requests "shall be prepared and presented to the court and submitted to opposing counsel for examination and objection within a reasonable time after the charge is given to the parties or their attorneys for examination." *Id.* 273. "Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is

51

submitted or requested are waived." *Id.* 279; *see DiGuiseppe v. Lawler*, 269 S.W.3d 588, 599 (Tex. 2008) (in context of a contract, noting that where a party has the burden to prove he was ready, willing, and able to perform, he had the burden to request a question on that issue under Rule 279).

When a party files a declaratory judgment that "involves the determination of an issue of fact, the issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending." Tex. Civ. Prac. & Rem. Code Ann. § 37.007. "Issues of fact in a declaratory judgment proceeding may be decided by a jury." *Burlington N.R. Co. v. Southwestern Elec. Power Co.*, 925 S.W.2d 92, 99 (Tex. 1996) (citing Tex. Civ. Prac. & Rem. Code Ann. § 37.007); *see also Choudhri v. Mokaram-Latif West Loop, Ltd.*, No. 14-23-00026-CV, 2025 WL 1037254, at *4 (Tex. App.—Houston [14th Dist.] Apr. 8, 2025, no pet.) (mem. op.) (concluding party waived issue where party's pleadings and evidence at the jury trial raised an issue in a declaratory judgment action and party could have submitted the issue to a jury but did not).

"The burden is on the party claiming an easement in another person's land to prove all of the facts necessary to establish the easement." *Bains v. Parker*, 182 S.W.2d 397, 399 (1944); *see also Stiles*, 483 S.W.3d at 584. Regarding an easement based on a plat, a dedication for public use requires: (1) the person making the dedication must be able to do so, i.e., have fee simple title; (2) a public purpose to

be served by the dedication; (3) the person must make either an express or implied offer; and (4) there must be an acceptance of that offer. *PSQ Barbie, LP v. Howard*, No. 02-22-00050-CV, 2023 WL 1456928, at *9 (Tex. App.—Fort Worth Feb. 2, 2023, no pet.) (mem. op.). "The dedication of a street or ROW involves setting apart private land for public purposes." *Price v. Leger*, No. 09-19-00199-CV, 2019 WL 6765756, at *3 (Tex. App.—Beaumont Dec. 19, 2019, pet. ref'd) (mem. op.) (citing *Viscardi*, 576 S.W.2d at 19; *Ford v. Moren*, 592 S.W.2d 385, 390 (Tex. Civ. App.—Texarkana 1979, writ ref'd n.r.e.)). Dedication may occur by express grant or by implication, and an express dedication is usually accomplished by a deed or other written instrument, such as a plat. *See id.* "The owner's intent to dedicate land for public use must be clearly shown." *Id.* (citing *Broussard v. Jablecki*, 792 S.W.2d 535, 537 (Tex. App.—Houston [1st Dist.] 1990, no writ)). "A dedication of private property for public use is never presumed but must be established by clear and unequivocal intention on the part of the landowner to presently set aside and appropriate a part of his land for public use." *Id.* (citing *Aransas Cnty. v. Reif*, 532 S.W.2d 131, 134 (Tex. Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.)). Recording a plat showing streets or roadways does not, standing alone, constitute a dedication as a matter of law. *Id.* "Where the plat merely uses the word 'street,' without dedicatory language, one claiming public dedication must show some act by the

53

owner dedicating the land in question, and an acceptance by the public or by local authorities." *Id.* (quoting *Jablecki*, 792 S.W.2d at 537) (other citation omitted).

Even "a plat's approval is not considered an *acceptance* of a proposed dedication and does not impose on a municipality any duty to maintain or improve any dedicated parts until the proper municipal authorities actually appropriate—by entry, use, or improvement—the dedicated parts." *PSQ Barbie*, 2023 WL 1456928, at *9 (citing Tex. Loc. Gov't Code Ann. § 212.011(a)). A governmental entity must accept the dedication on behalf of the public to complete a public easement's creation by express dedication. *See id.* (citing *Lambright v. Trahan*, 322 S.W.3d 424, 432 (Tex. App.—Texarkana 2010, pet. denied)). Formal acceptance can be relatively easily determined since it is done by governmental-entity action and recorded by things like meeting minutes. *See id.* Informal acceptance may be implied if the public uses the easement by general and customary use. *Id.*; *see also Viscardi*, 576 S.W.2d at 19.

## 2. Analysis

At trial, the disputed issues included whether Huelsman acquired Tract D by adverse possession and whether JR and JJ&A were entitled to an easement across Tract A owned by J&D. JR and JJ&A had the burden of proof regarding their entitlement to an easement, regardless of what type of easement it was. *See Stiles*, 483 S.W.3d at 584; *Bains*, 182 S.W.2d at 399. The only question submitted to the

54

jury involved an implied easement by necessity, yet on appeal Appellants focus on their entitlement to an easement based on the plat, which would involve an easement by public dedication. *See Price*, 2019 WL 6765756, at *3 (explaining that dedication of a street or right-of-way involves setting apart private land for public purposes); *see PSQ Barbie*, 2023 WL 1456928, at *9 (outlining elements for an easement based on a plat).

Appellants assert that they pleaded for a declaratory judgment and discussed the plat in their Counterclaim, so the trial court should have determined it as a matter of law. Even so, we disagree with the proposition that simply because this was a declaratory judgment the trial court should have determined this as a matter of law. This is because issues of fact can be tried by a jury in a declaratory judgment action just as other issues are tried. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.007; *Burlington N.R. Co.*, 925 S.W.2d at 99. Whether there was a dedication of an easement based on plats was a fact question. *See Viscardi*, 576 S.W.2d at 19. Thus, it is an issue the jury should have determined where the other fact issues in this declaratory action were also tried to the jury. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.007; *Burlington N.R. Co.*, 925 S.W.2d at 99; *see also Choudhri*, 2025 WL 1037254, at *4.

Appellants failed to request the submission of a question on their entitlement to an easement based on a plat or by public dedication. If Appellants did not

conclusively establish under the evidence their right to an easement based on the plat, and failed to submit a question to the jury, it is waived. *See* Tex. R. Civ. P. 279. Seemingly, Appellants contend they conclusively established their right to an easement based on the plat under the evidence. In order to have conclusively establish their right to an easement based on the plat, JJ&A and JR must have established: (1) the person making the dedication must have had the ability to do so, i.e., have fee simple title; (2) a public purpose to be served by the dedication; (3) the person must have made either an express or implied offer; and (4) there must have been an acceptance of that offer. *See PSQ Barbie*, 2023 WL 1456928, at *9. Here, there were at least two plats admitted into evidence, yet a plat showing streets or roadways does not, standing alone, constitute a dedication as a matter of law. *See Price*, 2019 WL 6765756, at *3.

One plat in the record says Rose City, East Beaumont Oil & Gas, Townsite Subdivision and was only attached to JR's Quitclaim Deed. The plat is undated. There is also another map appearing to show a portion of the platted subdivision, which JR claims shows the roadway right-of-way next to Block 31, with diagonal lines. That map contains no language showing this was the roadway or a right-of-way other than diagonal lines. *See id.* at *3 (even language like "street" was not sufficient to show intent as a matter of law). A similar map was attached to Huelsman's 1989 General Warranty Deed, but the map again contains no language

labeling the roadway or right-of-way, other than with diagonal lines. *See id.* Yet another plat in the record shows that the disputed property was labeled as an "abandoned road."

There was no evidence of when the plats were filed, who owned the properties at the time of the purported dedication of these roadways, or that the City accepted them. Thus, the evidence did not conclusively establish the requisite elements of an easement based on a plat. *See PSQ Barbie*, 2023 WL 1456928, at *9. Instead, SR testified that in the 1960s, before any of these parties purchased their property, Rose City abandoned these rights-of-way.

Having failed to conclusively establish their claim to an easement based on the plat and failing to submit a question on the issue to the jury when it was their obligation to do so, Appellants have waived this issue. *See* Tex. R. Civ. P. 279; *DiGuiseppe*, 269 S.W.3d at 599; *Choudhri*, 2025 WL 1037254, at *4. We overrule issue three.

## IV. CONCLUSION

Having sustained issue two in part and determined that the trial court erred by granting summary judgment on Appellants' demand for an accounting and request for appointment of a receiver under Texas Property Code section 114.008, we reverse the trial court's judgment on those two claims only and remand them to the trial court for further consideration. Having overruled issue two as it relates to

Appellants' breach of fiduciary duty claim and request for appointment of a receiver under Texas Civil Practice and Remedies Code section 64.001, overruled issue one, and overruled issue three, we affirm the trial court's judgment in all other respects.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

W. SCOTT GOLEMON
Chief Justice

Submitted on March 5, 2025
Opinion Delivered July 31, 2025

Before Golemon, C.J., Johnson and Chambers, JJ.